CHARLES W. PUTTKAMMER AND CORDELIA H. PUTTKAMMER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6316-73.     Filed May 12, 1976.

*Joseph H. Sharlitt,* for the petitioners.
*Robert E. Dallman,* for the respondent.

FEATHERSTON, *Judge:* Respondent determined a deficiency in the amount of $436.24 in petitioners' Federal income tax for 1970. The issue to be decided is whether petitioners are taxable on the full amount of the salary paid in United States dollars to petitioner Charles W. Puttkammer by the Agency for International Development, or whether that amount may be reduced either by an exclusion from income, an expense deduction under section 162(a)[1] or 212(1), or a loss deduction under section 165

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.

because he was required to use the official exchange rate in converting to Indian rupees the portion of his salary he used in paying personal or family living expenses.

### FINDINGS OF FACT

Petitioners Charles W. Puttkammer and Cordelia H. Puttkammer, husband and wife, resided in Washington, D.C., when their petition was filed. Petitioners filed a joint Federal income tax return for 1970 with the Internal Revenue Service.

Throughout 1970 Charles W. Puttkammer (hereinafter referred to as petitioner) was employed as a nutrition expert with the Agency for International Development (AID) of the United States Department of State, on assignment in New Delhi, India. He was responsible for designing and administering various nutrition programs in conjunction with the Indian Government. Petitioner was in India for about 4 years and during 1970 lived there with his wife.

Petitioner's salary checks were paid in United States dollars which were deposited in a bank in Washington, D.C. He found it necessary to convert some of those dollars into rupees in order to cover his living expenses in India.[2] He did this by drawing checks on his Washington, D.C., bank account and cashing them at the United States Embassy in New Delhi (hereinafter the Embassy). Pursuant to an Embassy directive issued by AID, United States employees were prohibited from buying rupees except at the Embassy. The exchange rate utilized by the Embassy was the official exchange rate established by the Indian Government—7.6 rupees for each dollar exchanged. Indian law prohibited the exchange of currency except at the government-imposed official rate. In 1970 petitioner exchanged $8,590.27 for rupees at the Embassy rate. These rupees were used to defray personal living expenses.

In addition to the official exchange rate, there existed a black market in India for the exchange of foreign currency. The black market or unofficial rate of exchange in India and in financial centers outside India (where there are no restrictions on

---

[2] A directive of the American Embassy, India, to all U.S. Government agency employees in India declared:

"U.S. Government employees in India are directed to refrain from paying for local purchases in the open market in a currency other than Indian rupees except in those instances where the purchases are legal under Indian law and the goods are not available for sale for rupees to any prospective buyer."

exchange rates) was more favorable than the official rate—approximately 12 rupees per dollar exchanged.

On their income tax return for 1970, petitioners claimed $3,165.51 as an adjustment to income due to an alleged loss on the conversion of dollars into rupees at the prescribed Embassy rate. Respondent disallowed the deduction and determined that the loss, if there was any, was personal and not related to petitioner's trade or business.

### OPINION

The law is settled that a taxpayer's gross income and liability for Federal taxes are expressed and measured in terms of United States dollars. See *Cinelli v. Commissioner,* 502 F.2d 695, 697 (6th Cir. 1974), affg. a Memorandum Opinion of this Court. Since petitioner received his 1970 salary checks from AID payable in dollars which were deposited in a Washington, D.C., bank, the total amount of those checks ($18,733.44) is the amount of his salary income. We can find no merit in petitioner's argument that his gross income should be adjusted for the difference between the official and unofficial exchange rates in respect of the $8,590.27 which he converted to rupees to cover his living expenses. His gross income is measured by the number of dollars he received from his employer, regardless of the manner in which he spent all or a part of that salary.

Nor is there any ground for allowing a deduction under section 162(a) [3] or section 212(1) [4] for the difference between the official and the unofficial exchange rates in respect of the $8,590.27 converted to rupees. The expenditure of that amount was incurred neither in carrying on petitioner's trade or business, sec. 162(a), nor for the production of income, sec. 212(1). While petitioner's employment with AID constituted a trade or business, the conversion of part of his dollars into rupees was not effected for any purpose "directly connected with or pertaining to" the conduct of his AID duties, sec. 1.162-1(a), Income Tax Regs. The conversion was effected in order to defray "personal,

---

[3] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *

[4] SEC. 212. EXPENSES FOR PRODUCTION OF INCOME.

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

(1) for the production or collection of income;

living, or family expenses," which are nondeductible under section 262. See *Richard Bohm,* 34 T.C. 929, 930 (1960); cf. *Richard Walter Drake,* 52 T.C. 842, 843-844 (1969).

Moreover, there is no merit in petitioner's contention that he suffered a loss deductible under section 165. That section allows individuals a deduction for uncompensated losses realized in a trade or business or in a transaction entered into for profit, sec. 165(c)(1) and (2). Since, as pointed out above, the alleged expenditures in controversy were incurred to defray personal, living, or family expenses, they do not meet the section 165(c)(1) or (2) requirements. Furthermore, to be deductible a loss must be evidenced by a closed and completed transaction, sec. 1.165-1(b), Income Tax Regs.; *Richard Bohm, supra* at 930. Since petitioner did no more than purchase rupees, there was no closed transaction from which he realized a loss. He could have converted his rupees into dollars at the same official rate as he had purchased them and thus have suffered no loss on a completed transaction. Cf. *S.E. Boyer,* 9 T.C. 1168, 1170-1171 (1947).

It is true that the Embassy directive and Indian law forbidding petitioner to use the black market in converting his dollars into rupees increased his living costs to some extent. But we can find no provision in the Internal Revenue Code which permits a deduction for that increase. Indeed, observance of many local laws affects the living costs of most taxpayers, but Congress has not seen fit to adjust their income tax liabilities for that reason. In the case of Foreign Service personnel, Congress has apparently recognized that the most practical method of adjusting compensation for differing local currency conversion rates is through allowances and differentials for employees on overseas assignments. See, e.g., section 912(2); 5 U.S.C. 5922 (1970).

To reflect the disposition of other issues,

*Decision will be entered under Rule 155.*