## WILLIAMS et al. v. UNITED STATES.

### WILLIAMS v. SAME.

#### Nos. 45050, 45654.

Court of Claims.
Feb. 1, 1943.

Carl J. Batter, of Washington, D. C. (R. E. Milling, of New Orleans, La., on the brief), for plaintiff.

S. E. Blackham, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

JONES, Judge.

This suit is based on a claim for refund of $81,723.94 in floor stocks taxes on sugar and cotton which plaintiff alleges were paid by the corporations involved and not passed on to the vendee.

The plaintiff is Liquidator of Sterling Sugars, Inc., a Delaware corporation. That corporation in 1937 succeeded another corporation by the same name which was a Louisiana corporation and which had been organized in 1921. Sterling Sugars Sales Corporation was organized in 1933 and at all times until 1937 all of its capital stock was owned by the Louisiana corporation. Since all these companies represented the same interests and participated in the same transaction, all their acts, for the purpose of simplicity in discussion, will be referred to as the acts of the plaintiff.

Under an amendment to the Agricultural Adjustment Act, adopted May 9, 1934, 48 Stat. 670, 676, § 9, 7 U.S.C.A. § 609, a floor-stocks tax on refined sugar became effective June 8, 1934, on all stocks of sugar then on hand. During the year 1934 the plaintiff paid $78,682.45 in such taxes.

Under the Agricultural Adjustment Act, approved May 12, 1933, 48 Stat. 31, 35, § 9, a floor-stocks tax was imposed on cotton bags on hand August 1, 1933. Plaintiff paid during the year 1933 $3,164.50 in taxes on these bags. This was later corrected $63.36 being refunded, leaving $3101.14 as the net amount paid.

Plaintiff claims that since the processing and accompanying floor stocks taxes were held invalid by the Supreme Court on January 6, 1936,[1] he is entitled to a refund of such taxes.

By the terms of Section 902 of the Revenue Act of 1936, 49 Stat. 1648, 1747, 7 U.S.C.A. § 644, provision was made for the refund of these taxes on compliance with the conditions set out therein. In brief, this statute required that claimant establish to the satisfaction of the Commissioner of Internal Revenue that he had paid the tax, that he had borne the burden thereof, that he had not passed it on to the vendee either separately or included within the price of the commodity; or that if such tax had been passed on, he had repaid it unconditionally to the vendee, and that the latter had not otherwise been relieved thereof or reimbursed therefor.

Section 903 of the same act, 7 U.S.C.A. § 645, provides for the method of filing of such claims.

Section 405 of the Revenue Act of 1939, 53 Stat. 862, 884, 7 U.S.C.A. § 645, extended the time for filing claims from July 1, 1937, to January 1, 1940.

Treasury Regulations 96 (1936 Edition) set out in detail the method of filing claims and making proof thereof.

Defendant first makes the technical defense that when the plaintiff first filed his tentative claim he did not furnish proper proof of his claim as required by the regulations, and that his amended claim was filed after the period allowed by the regulations and rules for the filing of such claims had expired; and, further, that such regulations permitted the filing of only one claim.

On June 29, 1937, a claim for refund marked "tentative return" on PT Form 76 was filed. On October 28, 1937, the Deputy Commissioner of Internal Revenue wrote plaintiff informing him that he had not filed sufficient facts with his return and advising him that unless such facts were filed within 60 days his failure to do so would result in disallowance of the claim. On December 29, 1937, the Deputy Commissioner advised the taxpayer that the evidence requested in the letter of October 28 had not been received and that if it were not furnished within 30 days from the date of the second letter it would be necessary to proceed with the adjustment of his claim on the basis of the evidence on file. On January 12, 1938, the plaintiff furnished additional facts with attached schedules.

On January 29, 1938, the Deputy Commissioner wrote plaintiff a letter advising him that as the schedules attached by plaintiff to the letter dated January 12, 1938, stated that he had passed the tax on to his customers, the claim was rejected.

■ Since the regulations were issued by the Commissioner of Internal Revenue, and since the additional facts were filed within the time specified by the Commissioner in his second letter dated December 29, 1937, the defense that the claim was not properly filed cannot be sustained.

After the extension of the time within which claims might be filed under the Revenue Act of 1939, supra, the plaintiff filed another claim covering the identical subject matter. This was made the basis of a second suit which was evidently filed as a precautionary step, and the two suits have been consolidated.

We think the claim is properly before the court for consideration on its merits.

Do the facts as disclosed by the record show that plaintiff complied with the requirements of the statute which were set out as conditions to his right to recover the taxes paid on floor stocks of sugar on hand on June 8, 1934? We do not think so.

Plaintiff paid the tax, but the evidence shows very clearly that he passed it on in the form of increased prices on the refined sugar which he sold to his customers.

Sugar was sold in a competitive market. On the day when the processing and floor stocks taxes became effective the price of refined sugar increased 55 cents per hundred pounds, approximately the amount of the tax. Plaintiff, together with all those in the competitive field, made similar increases in the price of sugar to their respective customers.

Plaintiff in connection with his claim included the following: "Tax paid on floor stock in June, July, and August, 1934, all of which was collected." He explained that this was a mistake of the secretary who filed the claim, and that what was intended to be conveyed was that this amount had been paid by plaintiff and collected by the

---

[1] Treasury Regulations 42 (1932 Ed.) as amended by T. D. 4394, XII–2, Cum. Bull. 354 (1933).

Government. Such an error was possible, but the claim of mistake would be much more persuasive had there not been other revealing facts and circumstances indicating that the taxes were passed on in the form of increased prices to the vendees.

In sending the various invoices to his customers, the plaintiff in each instance recited that the amount of the bill was the sum rendered "tax included." Here is the pertinent part of a typical bill:

| Quantity | Commodity | Prices | Plus PP Frt. |
|---|---|---|---|
| * * * 600 * * * | Bags Sterling Fine Granulated Sugar | $4.55 | Tax Included. |
| * * * 600 * * * | Bags Arlington Brand Sugar........ | $4.45 | Tax Included. |
| | | F. O. B. Sterling, La. | |

After the taxes were held invalid various customers wrote the plaintiff asking for a refund of the taxes which they claimed had been passed on to them. In replying to each of these letters plaintiff did not deny that he had passed the tax on, but on the contrary in effect admitted he had done so. The pertinent part of a typical reply letter from plaintiff is as follows:

"This corporation has paid processing taxes to the Internal Revenue Department of the Government on all sugars which have been sold by us to buyers, who in turn remit to us the amount of processing tax which was included in our invoices.

"Some of our buyers have in fact attempted to deduct the processing taxes from their remittances, thereby attempting to cause us to lose 53½¢ per hundred lbs. of sugar. In every instance we have returned remittance that shows such deductions.

"All of the above being true, we respectfully decline your request to return or refund to you any processing taxes which we assessed against shipments to you."

It is true that this letter refers to processing taxes rather than floor-stocks taxes, but the subject matter is the same. The floor-stocks taxes were in effect processing taxes applying to stocks on hand that had already been processed, so that the entire commodity might be covered, so that there might not be any favoritism between competitors in the same field, and to prevent companies piling up floor stocks between the time of announcement and the effective date of the tax and thus avoiding payment. The taxes were for identical amounts. Naturally the customers did not know whether their orders had been filled from stocks on hand or from newly processed goods. It was customary to refer to all of them as processing taxes, which is in effect what they were.

When plaintiff's witnesses were on the stand they studiously avoided saying that the floor-stocks and processing taxes were not included within the price of refined sugar as invoiced to their customers.

It is very clear from this record that the plaintiff passed the tax on to the respective vendees and that he consequently did not bear the burden of the tax. He is therefore not entitled to a refund of the floor-stocks taxes on sugar which he paid on stocks which were on hand on June 8, 1934, and which are involved in this suit.

The floor-stocks tax on cotton bags fall into an entirely different category. The plaintiff paid the floor-stocks tax on cotton bags which he had on hand on June 8, 1934. The record shows that he did not sell these sacks. He furnished them as containers for the sugar. He did not pass the tax on to anyone. He absorbed this small tax which he had paid and the burden of which he therefore bore. The undisputed testimony shows that these taxes were paid, that they were not passed on and that all the conditions of the statute were met.

The plaintiff is entitled to recover the sum of $3,101.14. It is so ordered.