BENEFICIAL FOUNDATION,
INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 159–79T.

United States Claims Court.

Aug. 9, 1985.

K. Martin Worthy, Washington, D.C., with whom was Hamel & Park, for plaintiffs. Laurence J. Whalen of counsel.

Mary M. Abate, Washington, D.C., with whom were Acting Asst. Attys. Gen. B. John Williams, Jr. and Roger M. Olsen, and Theodore D. Peyser, for defendant.

## OPINION

KOZINSKI, Chief Judge.

Plaintiff, an employer-related private foundation, challenges the Commissioner's denial of a ruling that its program of providing educational grants to children of employees is exempt from excise tax under 26 U.S.C. § 4945(g) (1982).

### Facts

Plaintiff is a private, non-profit charitable and educational organization exempt from taxation under 26 U.S.C. § 501(c)(3). Since its inception, plaintiff has derived its financial support in part through contributions from Beneficial Corporation and its subsidiaries (the "Beneficial Companies"), and their officers and stockholders. One of plaintiff's principal charitable activities is to provide educational grants to children of employees of the Beneficial Companies. Each year plaintiff distributes about 40% of the available funds in this manner, with the balance going to educational institutions, hospitals, social organizations and for medical research.

Only children of employees of the Beneficial Companies qualify for educational grants under plaintiff's program. Awards are made on the basis of their academic qualifications and financial need. Neither an employee's position nor his job performance are considered in determining whether an award ought to be made to his children. Once a child qualifies for an educational grant, he remains eligible even if his parent later leaves the employ of the Beneficial Companies. Grants range from $100 to $1,500 a year for up to four years. The money may be used to cover educational expenses at an approved college or university, including tuition, room and board, and textbooks. Grants are paid directly to the college or university, and periodic reports are required as to the courses taken and grades earned by a grantee.

Internal Revenue Code section 4945 imposes an excise tax upon certain expenditures of private foundations. Subsection (g) provides that the tax shall not apply to grants "awarded on an objective and nondiscriminatory basis pursuant to a procedure approved in advance by the Secretary." The Service has promulgated such a procedure for obtaining advance approval of grant programs. 26 CFR § 53.4945–4(d).

On May 22, 1974, plaintiff filed an application for advance approval of its educational grant program. Four years later, on June 13, 1978, the Service ruled that plaintiff's program did not qualify for advance approval under section 4945(g) and that grants made by plaintiff thereafter would be treated as taxable expenditures.

On September 5, 1978, plaintiff made three grant payments totaling $325. It then paid the excise tax (amounting to $34)

under protest and eventually brought this suit for a refund.

### Issue Presented

Plaintiff claims that the Service erred in failing to approve its program under 26 U.S.C. § 4945(g). Specifically, plaintiff claims that its program is exempt from excise tax under subsections (1) and (3) of that provision.

### Discussion

The relevant portion of section 4945(g) provides:

[The excise tax] shall not apply to an individual grant awarded on an objective and nondiscriminatory basis pursuant to a procedure approved in advance by the Secretary, if it is demonstrated to the satisfaction of the Secretary that—

(1) the grant constitutes a scholarship or fellowship grant which is subject to the provisions of section 117(a) and is to be used for study at an educational organization described in section 170(b)(1)(A)(ii), [or]

. . . .

(3) the purpose of the grant is to achieve a specific objective, produce a report or other similar product, or improve or enhance a literary, artistic, musical, scientific, teaching, or other similar capacity, skill, or talent of the grantee.

■ While the section requires that the taxpayer "demonstrate[ ] to the satisfaction of the Secretary" that it meets the requirements of the statute, it is now established that this phrase does not afford the Secretary unfettered discretion. *United States v. Jefferson Electric Manufacturing Co.*, 291 U.S. 386, 397–98, 54 S.Ct. 443, 447, 78 L.Ed. 859 (1934); *Lucas v. Kentucky Distilleries & Warehouse Co.*, 70 F.2d 883, 886–87 (6th Cir.1934). Such language may call for a somewhat stronger showing at the administrative level, but it allows for the normal process of judicial review of the decision. *See Schoneberger v. Commissioner*, 74 T.C. 1016, 1023–24 (1980); *Fireoved v. United States*, 318 F.Supp. 133, 143 (E.D.Pa.1970), *aff'd in part and rev'd in part*, 462 F.2d 1281 (3d Cir.1972); *Williams v. United States*, 48 F.Supp. 647, 99 Ct.Cl. 203, *cert. denied*, 320 U.S. 750, 64 S.Ct. 55, 88 L.Ed. 446 (1943).

### A. *Plaintiff's Entitlement Under Subsection (g)(1)*

A plan must meet two requirements in order to qualify for exemption under subsection (g)(1). First, grants made thereunder must be scholarships or fellowships subject to section 117(a); second, they must be used for study at organizations described in section 170(b)(1)(A)(ii). The parties agree that plaintiff's grant program meets the second of these requirements since all of its grants are used for study at colleges or universities that qualify under section 170(b)(1)(A)(ii). It is the requirement that the grants constitute fellowships or scholarships under section 117(a) that forms the basis of the dispute between the parties.

■ In 1976, the Service promulgated Rev.Proc. 76–47 to govern the determination whether an employer-related grant program complies with section 117(a). In issuing the procedure, the Service did not comply with the notice and comment requirements of the Administrative Procedure Act. This means that the procedure is not a regulation and does not have the force of law; it merely sets forth the methodology the Service will employ in evaluating an application for advance approval under section 4945(g) of an employer-related grant program.

Section 4 of the revenue procedure, titled "Guidelines," sets forth seven conditions every program must meet for advance approval. These conditions deal with such matters as the composition of the selection committee, eligibility standards and method of selecting grant recipients. A program meeting these conditions is then further considered under alternative tests. The first of these tests, contained in section 4.08 of the revenue procedure, is known as the percentage test. If the number of awards exceeds 25% of the number of applications or 10% of the number of employ-

ees' children shown to be eligible, the program fails this test. Alternatively, the procedure calls for the application of a facts and circumstances test, which requires the Service to consider and weigh a series of factors "to determine whether the primary purpose of the program is to provide extra compensation or other employment incentive, or whether the primary purpose is to educate recipients in their individual capacities." Rev.Proc. 76–47, § 4, 1976–2 C.B. 670.[1]

In its June 13, 1978, ruling, the Service noted that plaintiff's program did not meet the percentage test of section 4.08. The ruling also stated that "[a]fter due consideration, we have determined that we cannot approve your program under the facts and circumstances test." The ruling did not elaborate on this conclusion.

Plaintiff alleged that during the ruling process its attorney had been advised by Service officials that they would rely exclusively on the percentage test of Rev.Proc. § 4.08 and that they would not evaluate plaintiff's program under the facts and circumstances test. These allegations were supported by affidavits from plaintiff's counsel and were not rebutted by defendant. The court considered the issue sufficiently in doubt to require clarification from the Service as to whether it had in fact evaluated plaintiff's program under the facts and circumstances test.[2] The

court therefore remanded to the Service for that purpose. Order of Aug. 31, 1984.

On January 8, 1985, defendant filed a copy of a letter from J.A. Tedesco, Director, Exempt Organizations Technical Division of the Internal Revenue Service, stating that plaintiff's program had in fact been evaluated under the facts and circumstances test and found not to qualify. The letter attached a copy of an internal memorandum dated May 31, 1978, providing, in part, as follows:

> The Beneficial Foundation's program does not qualify under the facts and circumstances test. A high percentage of applicants (75%) receive awards. The number of awards made are substantial (117–161). The Company emphasizes the benefits employees may derive from the program in its special booklets entitled "You and Beneficial; Family Benefits" and "Educational Opportunities." The Foundation's program is only a part of an overall Company program to award scholarships to children of employees. The Hood College, Johns Hopkins University and Washington College programs also provide scholarships. These facts indicate that the Foundation [sic] primary purpose is to provide extra compensation or other employment incentive.

■ Plaintiff argues that this determination is defective because it does not consider (or give sufficient weight to) the other

1. The procedure lists the following among the factors the Service shall consider in making its determination:
 [T]he history of the program (such as the source of the program's funding)[, t]he courses of study for which the grants are available, any eligibility requirements imposed by the program (other than employment of the applicants or their parents and the age and grade level prerequisites for the studies for which the grants are available), the publicity given the grant program, the degree of independence of the selection committee, the particular standards used for selection, the specific means used to determine whether those standards have been met, the precise nature of the employee limitation or preference, the number of grants available, the number of employees or their children who would be eligible for them, the percentage of

eligible employees or their children applying for grants who normally (e.g. on an average basis), receive grants under the program, and whether and how many grants are awarded to individuals who do not qualify as employees or children of employees.
Rev.Proc. 76–47, § 4, 1976–2 C.B. 670.

2. Because the revenue procedure is not a regulation, it does not have the force of law and therefore cannot engraft the percentage requirement of its section 4.08 onto the statute. The availability of the facts and circumstances test as an alternative renders the percentage requirements of Rev.Proc. § 4.08 merely safe harbors. The Service may, of course, establish such safe harbors as a matter of administrative convenience without promulgating a regulation. *Cosby v. United States*, 8 Cl.Ct. 428, 441 & n. 20 (Cl.Ct.1985).

facts and circumstances listed in the revenue procedure. *See* n. 1 *supra.* This argument is not persuasive. The factors listed merely illustrate the considerations the Service will weigh in reviewing a scholarship program. It is not necessary that all of the factors be considered, that these be the only factors considered, or that such factors as are considered be given equal weight. For purposes of the court's review, it suffices that the factors considered by the Service are relevant and that the decision reached is entirely rational. Having satisfied itself that the Service has properly exercised its discretion pursuant to Rev.Proc. 76–47 and 26 U.S.C. § 4945(g), the court defers to the administrative determination.

### B. *Plaintiff's Entitlement Under Subsection (g)(3)*

1. The Service must approve a grant program under subsection (g)(3) if grants thereunder are made in order "to achieve a specific objective, produce a report or other similar product, or improve or enhance a literary, artistic, musical, scientific, teaching, or other similar capacity, skill, or talent of the grantee." Plaintiff argues that its college scholarships fall comfortably within the broad language of this provision. Defendant reads subsection (g)(3) much more narrowly as exempting only grants made for a very specific objective (such as conducting scientific research or writing a monograph), the purpose of obtaining a college education and securing a college degree being far too broad.

■ Where, as here, the statute is susceptible to two interpretations, the court will normally defer to the construction selected by the administrative agency charged with its enforcement. *See Lykes Bros. Steamship Co. v. United States,* 513 F.2d 1342, 206 Ct.Cl. 354, 369 (1975). Plaintiff, however, has pointed to a series of revenue rulings, both published and private, where the Service has consistently taken the position that merely obtaining a college education *is* a sufficiently narrow

purpose to satisfy the requirements of subsection (g)(3).

Plaintiff places principal reliance on Rev. Rul. 77–434, 1977–2 C.B. 420, which addressed the question whether long-term, low-interest loans made by a private foundation qualified under section 4945(g). The foundation made such loans to worthy recipients selected primarily on the basis of need, although academic ability and potential were also considered. The Service held the program exempt. In reaching that conclusion, it noted that subsections (g)(1) and (g)(2) were inapposite because they only apply to programs involving grants, whereas the foundation was making loans. The Service then considered the applicability of subsection (g)(3):

> The educational loans made by the private foundation under the program described above afford the recipients an opportunity to continue their education at an institution of higher learning. While the recipients of its grants are free to choose the schools and classes they attend, *the foundation specifically limits the use of the funds to furtherance of the recipient's education at an educational institution described in section 170(b)(1)(A)(ii) of the Code. Such an objective is sufficiently narrow and definite to ensure that the recipients are authorized to expend the funds solely in furtherance of a purpose described in section 501(c)(3).* Accordingly, the loans made under the private foundation's program are individual grants within the meaning of section 4945(g)(3).

*Id.* at 421 (emphasis added).

Defendant argues that this ruling is inapposite because it involved loans rather than grants. Reply Brief for the United States in Support of Its Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment at 9 n. 10 (filed May 6, 1984). This is a distinction without a difference. Whether a payment is a loan or a grant has no bearing on the question addressed in the ruling,

whether the *purpose* of the payment falls within subsection (g)(3).

Moreover, another published ruling reaches the same result where the payment was a grant. Rev.Rul. 77–44, 1977–1 C.B. 355, considered whether grants made by a private foundation were exempt from tax under section 4945(g), where the foundation was formed to attract worthy college students to teach in the public schools of a particular state. The Service concluded that the grants did not constitute fellowships or scholarships (because recipients were expected to render substantial services in return) and the program therefore could not qualify under subsection (g)(1).[3] The Service held that the grants nevertheless qualified under subsection (g)(3) because "grants made to attract qualified teachers in order to improve the quality of education in an area are made for a specific objective as described" in that subsection; and that "[t]he grants are also described in section 4945(g)(3) to the extent that they serve to improve or enhance the recipients' teaching skills." *Id.* Quite clearly, the Service has drawn a relatively broad perimeter in describing the purposes a program may have and still satisfy subsection (g)(3).

Defendant's position here as to what constitutes a proper purpose under subsection (g)(3) appears to be irreconcilably at odds with the position it has adopted in its published rulings. The rulings in question were issued at approximately the same time as the ruling in this case. They have not been revoked or modified; they have been followed in a series of private rulings.[4]

 Revenue rulings are not binding on the court when invoked by the Service, since they are considered "simply the contention of one of the parties to the litigation." *Estate of Lang,* 64 T.C. 404, 407–08 (1975); *accord Minnis v. Commissioner,* 71 T.C. 1049, 1057 (1979). The matter is quite different when a ruling that has not been revoked or modified is invoked by a taxpayer. The taxpayer to whom the ruling is issued is normally entitled to rely on it fully. *See Lesavoy Foundation v. Commissioner,* 238 F.2d 589, 591–92 (3d Cir. 1956); J. Mertens, Law of Federal Income Taxation § 49.95 (1984). *But cf. Exxon Corp. v. United States,* 7 Cl.Ct. 347, 352 (1985), *appeal filed,* No. 85–2160 (Fed.Cir. Mar. 29, 1985) (taxpayer cannot rely on issues not presented to or considered by the Service in issuing its ruling). When a ruling is invoked by another taxpayer, its precedential effect turns on whether the ruling is published. The Service issues numerous private rulings each year; such rulings affect only the rights of the taxpayer in question. *See Hanover Bank v. Commissioner,* 369 U.S. 672, 686 & n. 19, 82 S.Ct. 1080, 1088 & n. 19, 8 L.Ed.2d 187 (1962); *International Business Machines Corp. v. United States,* 343 F.2d 914, 170 Ct.Cl. 357, 373 n. 15 (1965); J. Mertens, § 60.16, at 62. On the other hand, some rulings are published for the specific purpose of giving guidance to all taxpayers.[5]

---

3. The Service reasoned as follows:

Since grants are awarded to those who acknowledge that they plan to teach in a particular State, the foundation can reasonably expect recipients to teach in that State upon graduation. Thus, the grants not only further the education of recipients, but further the independent objective of the foundation to attract qualified teachers to State schools. Since the grantor foundation expects the recipients to render substantial services in return for its grants, the grants are not excludable from gross income under the provisions of section 117(a) of the Code, even though the conditions upon which they are awarded are not legally enforceable. Therefore, the grants are not scholarships described in section 4945(g)(1).

Rev.Rul. 77–44, 1977–1 C.B. at 355.

4. The most recent of these rulings was issued only last year. Priv.Rul. 8430081 (1984); *see also* Priv.Rul. 7728045, IRS Letter Ruling Reports (CCH) No. 19 (July 18, 1977).

5. Published Revenue Rulings appear in the Internal Revenue Bulletin, "the authoritative instrument of the Commissioner of Internal Revenue for announcing official rulings and procedures...." *See, e.g.,* 1984–3 C.B. at iii. The Introduction to the Cumulative Bulletin, the bound compendium of the IRS Bulletin, explains that "[i]t is the policy of the Service to publish in the Bulletin all substantive rulings necessary to promote a uniform application of the tax laws...." *Id.* Moreover, it notes that

So long as a published ruling is not revoked or modified,[6] it may be invoked by any taxpayer as if it were issued to him personally and, to the extent that it addresses issues in his case, the ruling will normally be dispositive.[7] In this case, the published rulings on which plaintiff relies clearly establish that the purpose of its grant program is sufficiently narrow to meet the requirements of subsection (g)(3). This interpretation is binding on the Service here.[8]

■ 2. Defendant belatedly raised the argument that plaintiff is not entitled to recover because its grant program is not administered "on an objective and nondiscriminatory basis" under the flush language of section 4945(g). According to defendant, this conclusion flows from the fact that the court upheld the Commissioner's determination that the program did not qualify under subsection (g)(1). *See* pp. 3–5 *supra.*

Defendant's argument appears to read subsections (g)(2) and (g)(3) out of the statute because, under this view, an adverse determination under subsection (g)(1) would automatically foreclose claims under the other two subsections. In any event, whether plaintiff's program was made "on an objective and nondiscriminatory basis" is a mixed question of fact and law that is plainly different from that under subsection (g)(1), whether the grants constitute

scholarships or fellowships under section 117(a). The Service did not consider or address whether plaintiff's program was made on an objective and nondiscriminatory basis and, insofar as factual determinations were required to resolve this issue, none were made. Since the court's function is to review the Commissioner's decision, it cannot approve a ruling based on a determination not made during the administrative process.

## C. *Effect of the Court's Decision*

The court has held that the Service erred in concluding that plaintiff fails to qualify for exemption under section 4945(g)(3). The court therefore sets aside the June 13, 1978, ruling. The court does not, and cannot on this record, rule that plaintiff's plan in fact qualifies for exemption from taxation under section 4945(g). Since the Service's initial response to the ruling request has been set aside, plaintiff's request is deemed still pending before the Commissioner who may rule thereon in any manner consistent with this opinion.

Plaintiff's status for the tax year here in question (as well as for any intervening tax years) is governed by 26 CFR § 53.4945–4(d)(3). That section provides that "[i]f, by the 45th day after a request for approval of grant procedures has been properly submitted to the Internal Revenue Service, the organization has not been notified that

---

"[r]ulings ... reported in the Bulletin do not have the force and effect of Treasury Department Regulations, *but they may be used as precedents." Id.* (emphasis added).

**6.** During the remand of this action between August 31, 1984, and February 21, 1985, the Service had the opportunity to revoke or modify these rulings, but failed to do so. These rulings therefore continue to represent the Service's position on this issue, a position on which it can expect taxpayers to rely.

**7.** The court leaves for future consideration whether circumstances exist where it may be appropriate to overturn a published ruling favoring a taxpayer at the behest of the Service. In this case, defendant has not asked the court to overturn the published rulings in question, apparently taking the position that the court ought simply to ignore them. To ignore published rulings is, however, tantamount to overturning them because rulings can provide no

guidance to taxpayers if the Service and the courts fail to give them effect in litigation.

**8.** Even aside from the binding effect of the ruling, the position advanced by plaintiff is consistent with defendant's own long-established administrative construction of subsection (g)(3). *See Hanover Bank,* 367 U.S. at 686, 82 S.Ct. at 1088 (court may consider unpublished rulings in determining the service's established administrative interpretation); J. Mertens, § 60.16, at 62. Although this interpretation leads to a result defendant finds undesirable in this case, it apparently led to desirable results in a variety of other cases represented by the two published rulings and the series of unpublished rulings following them. In such circumstances, it is appropriate to defer to the well-established administrative practice rather than to a position adopted to serve expediency in a particular case.

such procedures are not acceptable, such procedures shall be considered as approved from the date of submission until receipt of actual notice from the Internal Revenue Service that such procedures do not meet the requirements of this section." Here, the court has set aside the Commissioner's notice that the procedures are disapproved. The notice is therefore of no legal effect and does not toll the operation of this provision. Plaintiff is entitled to deem its procedure approved until such time, if any, as the Service issues a valid notice to the contrary.

### Conclusion

The clerk is directed to enter judgment for plaintiff for the amount stated in its complaint, together with interest as provided by law and costs.