The **TRAVELERS INSURANCE COMPANY, Plaintiff,**

v.

The **UNITED STATES, Defendant.**

**Nos. 494–88T, 262–89T.**

United States Court of Federal Claims.

March 21, 1996.

Peter H. Winslow, Washington, D.C., with whom was Biruta P. Kelly, for plaintiff.

Stuart J. Bassin, Washington, D.C., with whom were Loretta C. Argrett, Assistant Attorney General, Mildred L. Seidman and David Gustafson, United States Department of Justice, Tax Division, for defendant.

## OPINION

SMITH, Chief Judge.

This case is before the court on plaintiff's Motion for Partial Summary Judgment and the government's Cross–Motion for Partial Summary Judgment.[1]  Plaintiff seeks recovery in the amount of $9,965,157, plus interest for the alleged overpayment of federal taxes during the taxable years 1974 through 1980. Plaintiff claims that its method of translating its profits and losses from Canadian operations into United States dollars clearly reflected income and that the Internal Revenue Service (IRS or Service), in requiring plaintiff to change its method, abused its discretion.  Plaintiff contends, therefore, that its taxable income must be recomputed and that it must be awarded the full amount of its refund claim.  The government asserts that the actions of the Service did not constitute an abuse of discretion and that, even if they did, plaintiff would not be entitled to use its accounting method.  After careful review of the briefs of both parties and after oral argument, the court grants plaintiff's motion and denies the government's motion.

---

1.  Both parties have filed cross-motions for summary judgment on the "foreign tax credit" and the "prepayment charges" issues.  The court has addressed the foreign tax credit issue in a previous opinion, *Travelers Ins. Co. v. United States*, 28 Fed.Cl. 602 (1993).  The prepayment charges issue is still under consideration by the court. This opinion, therefore, only addresses the cross-motions relating to the "foreign currency translation" issue.

## FACTS

Plaintiff, the Travelers Insurance Company (Travelers) is a stock corporation existing under the laws of Connecticut. Plaintiff is in the business of writing life, accident, and health insurance. As such, during the tax years 1977 through 1980, plaintiff was taxed under the provisions of Subchapter L, Part 1, Section 801 *et seq.*, of the Internal Revenue Code (IRC) of 1954.[2]

During the years in question, plaintiff conducted both insurance underwriting and investment operations in Canada, keeping its books and records for those activities in Canadian dollars. In preparing its tax returns for these operations, plaintiff calculated its taxable gain and income by computing the net amounts in foreign currency and then translating them into U.S. dollars according to the year-end exchange rate. Plaintiff had been using this method (Travelers' Method) to report its Canadian branch income since 1962.

Upon audit of plaintiff's tax returns for the taxable years 1977 through 1980, the Internal Revenue Service (IRS or Service) determined that plaintiff's procedures for reporting its Canadian operations did not accurately reflect income. The IRS, relying upon Section 446(b) of the Code,[3] recomputed plaintiff's income by converting each line-item amount attributable to Canadian operations into U.S. dollars, combining that amount with U.S. dollar amounts attributable to plaintiff's other operations, and reporting the total in U.S. dollars. (Service Method.) Under the Service Method, certain of plaintiff's assets—primarily policy loans, bonds, mortgages and partnership interests—were converted from Canadian to U.S. dollars according to historic (time-of-purchase) exchange rates. All other reportable items—income, deductions, reserve liabilities, receivables, etc.—were converted by using current, end-of-the-year exchange rates.

Plaintiff has filed a Motion for Partial Summary Judgment, arguing that (1) the Service never made the determination, required by law, that plaintiff's method did not clearly reflect income, and (2) even if it made such a determination, the Service Method resulted in a distortion of plaintiff's taxable income.[4] The government has filed a cross-motion, contending that the IRS properly concluded that the Travelers' Method did not clearly reflect income, and that the Service properly imposed upon plaintiff the Service Method.

## DISCUSSION

A. Review of the Secretary's Acts under Section 446

Section 446 of the Internal Revenue Code prescribes the permissible methods of tax accounting as follows:

(a) General Rule.—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

(b) Exceptions.—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income.

26 U.S.C. § 446.

In this case, both parties agree that the Travelers' Method is a method of accounting within the meaning of section 446(a). What is in dispute, however, is whether the Secretary abused his discretion in determining that the Travelers' Method did not clearly reflect plaintiff's income and in imposing the Service Method instead.

---

**2.** Unless otherwise indicated, the terms "IRC" and "Code" will refer to the Internal Revenue Code provisions in effect during the 1977–1980 time period; many provisions have since been repealed or revised.

**3.** Section 446(b) of the 1954 Code authorized the Service to prescribe a method of accounting if the taxpayer has used no method of accounting

or a method that does not "clearly reflect income."

**4.** In its Brief in Opposition to Defendant's Cross–Motion, plaintiff also argues that the Travelers' Method clearly reflects plaintiff's income for the years in question.

It is well established that, in a tax refund suit, there is a strong presumption that the Commissioner's determinations are correct. *See, e.g., Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); *Tucker v. United States,* 8 Cl.Ct. 180, 186 (1985). It follows, therefore, that under section 446(b) the Commissioner has broad discretion to determine whether an accounting method clearly reflects income. *See Thor Power Tool Co. v. Commissioner of Internal Revenue,* 439 U.S. 522, 532, 99 S.Ct. 773, 780–81, 58 L.Ed.2d 785 (1978); *Clement v. United States,* 217 Ct.Cl. 495, 580 F.2d 422, 430 (1978).

In any tax refund case, however, this court has the obligation to review *de novo* all issues of fact and law. *See Mulholland v. United States,* 28 Fed.Cl. 320, 333 (1993), *aff'd without op.,* 22 F.3d 1105 (Fed.Cir. 1994). When the dispute centers on the accuracy of a taxpayer's method of accounting, therefore, the court must review the evidence to determine whether or not, as initially applied, the method clearly reflects income. *Id.* at 334. This evidence may either be stipulated or undisputed facts on summary judgment.

*De novo* review of the taxpayer's method of accounting may, at first blush, seem to contradict the express language of section 446(b) because implicit in the phrase "in the opinion of the Secretary" is the concept of Secretarial discretion. Upon further examination of the placement of that language within the section, however, it is clear that section 446(b) contemplates two different levels of judicial review. The first determination to be made by the Secretary— whether the taxpayer's regularly used method of accounting clearly reflects income—is not subject to the Secretary's opinion and therefore is to be reviewed *de novo. See Id.* at 335. The second determination—what alternative method does clearly reflect income—is subject to the "opinion of the Secretary" and therefore must be accorded the significant degree of deference normally accorded to an administrative agency by a court. *See Id.* at 334–35.

It is not the intention of this court to modify or limit the amount of latitude that has been consistently accorded the Secretary in determining what method of accounting will accurately reflect a taxpayer's income. The court recognizes that the exercise of Secretarial discretion in this matter must be upheld unless "clearly unlawful or plainly arbitrary," *Thor Power Tool Co. v. Commissioner,* 439 U.S. 522, 532–33, 99 S.Ct. 773, 781 (1979); *B.A. Ballou and Co. v. United States,* 7 Cl.Ct. 658, 662 (1985). The court emphasizes, however, that this degree of deference is appropriate only where a taxpayer's accounting method is inaccurate and the Secretary must then determine which method will correctly reflect income. *See Mulholland* at 335.

Plaintiff contends that the Secretary's determination of whether a method of accounting accurately reflects income must be based on a sufficient factual basis to support his conclusion. In this case, plaintiff asserts, the Secretary can not supply any factual findings to support his conclusion that the Travelers' Method does not accurately reflect income. Plaintiff also asserts that the Secretary abused its discretion by imposing the Service Method without making any determination regarding whether it clearly reflected plaintiff's income. Plaintiff alleges that this failure on the part of the Secretary resulted in a distorted computation of plaintiff's taxable income and that, therefore, the Travelers' Method must be imposed.

B. The Secretary's Finding that the Travelers' Method Did Not Clearly Reflect Income

Neither the Internal Revenue Code nor regulations in effect during the period at issue required the use of a particular method of accounting for the translation of foreign currency.[5] *See, e.g., American Pad & Textile Co. v. Commissioner,* 16 T.C. 1304, 1311, 1951 WL 173 (1951), *acq.* 1951–2 C.B.1; Donald R. Ravenscroft, *Taxation of Income Arising from Changes in Value of Foreign Currency,* 82 Harv.L.Rev. 772, 780 (1969).

5. For taxable years beginning after December 31, 1986, section 987 of the Internal Revenue Code of 1986 provides specific rules for translation of profits and losses from branch operations.

Under Treasury Regulation § 1.446–1(a)(2), however, an accounting method consistently used by a taxpayer and reflective of accounting principles "generally accepted" in a particular business or trade were treated as "clearly reflecting income." 26 C.F.R. § 1.446–1(a)(2). In addition, two methods of conversion were expressly permitted by the Service: the "profit and loss" and the "net worth" methods. Under the "profit and loss" method, the net income attributable to foreign branch operations is computed in foreign currency and then translated to U.S. dollars at the exchange rate prevailing at the end of the tax year. *See* Rev.Rul. 75–107, 1975–1 C.B. 32. Under the "net worth" method, foreign income is also calculated by translating the collective results of branch operations. However, it is the balance sheet net worth (the net change in the dollar value of equity over the course of the taxable year), rather than the income of the foreign branch, that is translated.[6] *See* Rev.Rul. 75–106, 1975–1 C.B. 32; Treas.Reg. § 1.987–5(a)(1).

Under the Travelers' Method, plaintiff reported its Canadian branch taxable investment income and its gain from operations in Canadian dollars and then converted these amounts into U.S. dollars by using end-of-the-year exchange rates. Plaintiff contends that this is nothing more than a "profit and loss" method as defined by Treasury regulations and revenue rulings and that it was an abuse of discretion for the Service not to have allowed its use during the years at issue in this case. The minor differences between the Travelers' Method and the profit and loss method, plaintiff contends, are necessary to account for the particular tax treatment of insurance companies provided for in subchapter L, Part 1 of the 1954 Code.

Defendant contends that this method is not the same as the profit and loss method as defined by revenue rulings and Treasury regulations because these publications do not provide any guidance on their application to life insurance companies, do not report line items in foreign currency, and do not rely on

a "Canadian Exchange Adjustment." The court finds to the contrary.

Revenue Ruling 75–107 deals with the following set of facts:

> M, a domestic corporation, has a branch operation in foreign country Y. The branch keeps a separate set of books in terms of the currency of country Y and renders a report to M at the end of the taxable year with respect to its net profit. Both M and its branch use an accrual method of accounting.

In answer to the question of how M should report its income or loss from its operations in country Y, the ruling stated:

> [T]he net profit of the branch located in country Y for the year may be computed in the currency of country Y. From the branch net profits for the year there should be submitted the amount remitted to M during the year, expressed in country Y units. To determine the equivalent of the profits in terms of United States money, the amount remitted should be converted into United States money at the rate of exchange in effect at the date such remittance was made. The balance of the net profits, expressed in Country Y's units should be converted into United States money at the rate of exchange as of the end of the taxable year, regardless of the fact that the profits may not have been remitted to M.

Rev.Rul. 75–107, 1975–1 C.B. 32.

The Travelers' Method, which computes net gain or loss in Canadian currency and then converts this amount to U.S. dollars by the end-of-the-year exchange rate, clearly employs the method described above. It is true that, unlike Revenue Ruling 75–107, the Travelers' Method results in plaintiff's initially reporting certain line items in terms of Canadian dollars. By employing a "Canadian Exchange Adjustment," however, the Travelers Method causes a translation of the net taxable income from plaintiff's Canadian

---

**6.** "Branch equity" is defined as the excess of branch assets over branch liabilities. *See, e.g.,*

Treas.Reg. 1.989(c)–1(a)(1).

branch operations into U.S. dollars.[7] This is, the court believes, the crux of the profit and loss method described in Revenue Ruling 75–107.

It is generally accepted that, so long as it is not revoked or modified, a published revenue ruling may be relied upon by any taxpayer as if had been issued to that taxpayer personally. *See, e.g., Beneficial Foundation, Inc. v. United States,* 8 Cl.Ct. 639, 645 (1985). To the extent that the ruling addresses the issues present in the taxpayer's case, the ruling will be dispositive. *Id.* In this case, where the Travelers' Method is essentially the same as the profit and loss method described in Revenue Ruling 75–107, plaintiff is entitled to invoke the ruling as evidence that the Travelers' Method clearly reflects income.

With respect to defendant's assertion that the ruling does not address life insurance companies, the court finds that this does not necessarily preclude its application in this case. First, the language of the ruling indicates that the Service intended to make the profit and loss method an available method of conversion for all taxpayers. The statement that "[t]he foregoing represents one acceptable method of reporting income or loss of a foreign branch," for example, contains no words of limitation that might apply to insurance companies or any other types of taxpayers. Its plain language applies to insurance companies. Even if the Service did express concern that the intricacies of life insurance company taxation might make the strict application of the profit and loss method problematic, the Travelers' Method has taken at least some of these intricacies into account.

The government asserts two primary bases for the Service's determination that the Travelers' Method did not clearly reflect income. First, the government contends that the Travelers' Method resulted in the undis-

closed reporting of numerous tax return items in "quasi-currency". Def.'s Br. in Supp. of Cross–Motion for Partial Summ. J. at 34–35. Second, the government asserts that the Travelers' Method was "very complicated." *Id.* at 35–36.

With respect to the quasi-currency issue, defendant contends that, while a taxpayer must compute its federal tax liability in terms of United States dollars, the Travelers' Method results in "reporting numerous line items in quasi-currency." *Id.* at 34. Defendant contends that the Secretary was therefore correct in determining that the Travelers' Method does not clearly reflect income.

In support of this contention, defendant relies solely on *Puttkammer v. Commissioner,* 66 T.C. 240, 242, 1976 WL 3689 (1976). The plaintiff in *Puttkammer* was an employee of the United States Agency for International Development who was stationed overseas in India. Plaintiff's salary checks were paid in U.S. dollars and deposited in a bank in the United States. Plaintiff found it necessary, therefore, to convert some of his income into Indian currency to cover his living expenses abroad. Although there were two exchange rates—an official rate and a more favorable unofficial rate—plaintiff was prohibited under Indian law from utilizing the unofficial rate. On his federal income tax returns plaintiff attempted to adjust his income to compensate for the difference between the official and unofficial Indian rates. The I.R.S. disallowed the adjustment.

Holding that one's gross income is measured by the number of U.S. dollars received regardless of how the income is spent or whether these expenditures require a conversion into other types of currency, the *Puttkammer* court upheld the Service's decision. In so doing, the court stated that "a taxpayer's gross income and liability for Federal

7. The Travelers' Method is also slightly different from the profit and loss method defined in Treas. Reg. § 1.987–5(a)(1) and Revenue Ruling 75–107 in that the Travelers' Method makes separate calculations of Canadian gain or loss for purposes of both taxable investment income (TII) and gain from operations (GFO), and thus reports two dollar figures. This modification was designed to reflect section 802(b)(2) of subchapter L, under which life insurance companies are

permitted to defer taxation of one-half of the excess of gain from operations over taxable investment income. By employing two separate calculations rather than one for all net taxable income from foreign operations, plaintiff was attempting to reflect this "phase system of taxation" while remaining faithful to the general framework of the profit and loss method of accounting.

taxes are expressed and measured in terms of United States dollars." *Puttkammer* at 242. This language, however, addresses only the issue of whether a taxpayer may report his income, earned in United States dollars, in such a way as to reflect a later conversion into foreign currency. It does not, as defendant implies, address the issue of how to calculate and report income received in *foreign* dollars and later converted into U.S. dollars. The two issues are very different.

Defendant's reliance upon *Puttkammer* is further misplaced because, although the court does hold that a federal taxpayer must report its income in U.S. dollars, the Travelers' Method does not violate this requirement. It is true that, under the Travelers' Method, plaintiff reported its individual Canadian branch line items without first converting each of them to U.S. dollars. It is also true that, as a result, plaintiff included both Canadian and United States dollars in several line items on its returns. It is not true, however, that plaintiff did not report the net amount of taxable income attributable to its Canadian branch operations in terms of U.S. dollars. After separately calculating its foreign taxable investment income and gain from operations, plaintiff, under the Travelers' Method, converted each amount to a U.S. dollar figure. This amount was then also reported on plaintiff's returns. This is the profit and loss method.

Defendant also asserts that plaintiff's "use of a home-made, very complicated [8] 'Canadian Exchange Adjustment' likewise supports the Service's determination that the Traveler's approach did not clearly reflect income." Def.'s Opp'n Br. at 35. According to defendant, because of the inherent complexity involved in computing Life Insurance Company Taxable Income (LICTI), it is "virtually impossible" to make an accurate adjustment reflecting the current exchange rate. *Id.*

The only proof defendant offers in support of this statement is a "simplified example" of what happens when a company attempts to make a foreign currency adjustment to calculations that involve two types of currencies. *See Id.* at 36, n. 35. In this example defendant calculates the amount of total gross receipts earned by a company with both U.S. and German operations. Defendant does not first translate the marks into dollars, but adds the marks and dollars together as "quasi-units." Defendant then subtracts the amount of U.S. dollar expenses to determine gross profits in "quasi-units," which then requires an indeterminable and changing foreign currency adjustment to arrive at taxable income.

While this example does illustrate the difficulties encountered in making adjustments where more than one type of currency is involved, it is not relevant to the Travelers' Method. In the Travelers' Method, all Canadian branch operations, including income assets, expenses and reserves, are reported *on a Canadian dollar basis*. The GFO and TII are separately calculated *in Canadian dollars*. These amounts are then *converted to U.S. dollars* according to the current, end-of-the-year exchange rate and added on as line-items to plaintiff's returns. Unlike the illustration provided by defendant, the Travelers' Method does not involve adding, subtracting, multiplying and dividing two different currencies as if they were one. Defendant's example, therefore, cannot serve as the basis for disallowing the Travelers' Method as not clearly reflecting income.

Defendant has not offered any conclusive evidence in support of the Service's determination that the Travelers' Method does not clearly reflect income. Plaintiff, on the other hand, has provided the court with an ample basis for concluding that the Service's determination on this issue was incorrect. In addition to demonstrating the Service's approval of the profit and loss method in general, plaintiff has shown that the Service approved of, if not required, the use of the Travelers' Method in particular. Plaintiff asserts that, although the Service disallowed use of the Travelers' Method from 1977 through 1980, it permitted plaintiff to use the method until 1977, and after 1980 permitted plaintiff to change back to the method. Although defendant denies that the Service ever adopted the Travelers' Method, plaintiff has provided sufficient evidence to the contrary.

**8.** If complexity is a defect then the whole insurance tax code is fraught with this danger.

The affidavit of Charles Andreuk,[9] for example, states that plaintiff adopted the Travelers' Method as a result of negotiations with the I.R.S. based upon its audit of plaintiff's 1961 tax returns. Pl.'s Ex. F–4. Similarly, the workpapers used to compute plaintiff's 1981–1983 taxable income and reviewed by the Service upon audit indicate that, despite its disallowance of the Travelers' Method from 1977–1980, the Service reauthorized use of the Travelers' Method for the 1981–1983 tax period. *See* Pl.'s Exhibits 5, I3–4, I6–14.

█ It is true that the fact that the Commissioner previously accepted an accounting method does not, in and of itself, preclude her from later challenging the method. *See Niles Bement Pond Co. v. United States,* 281 U.S. 357, 362, 50 S.Ct. 251, 252, 74 L.Ed. 901 (1930). A taxpayer's consistent use of a particular accounting method, however, is entitled to considerable weight. *Fort Howard Paper Co. v. Commissioner,* 49 T.C. 275, 284, 1967 WL 1266 (1967). In this case, where the Service twice authorized plaintiff to change its accounting method to the Travelers' Method, plaintiff's consistent use lends particularly strong factual support for the position that the method clearly reflects income.

Given the foregoing, the court concludes that the government has failed to show any basis for its position that the Travelers' Method of accounting did not accurately reflect plaintiff's income for taxable years 1977 through 1980. Accordingly, the court finds that the Secretary acted outside the scope of his section 446(b) authority by requiring plaintiff to use the Service Method during the years at issue. Under section 446(a), therefore, plaintiff's taxable income for the years at issue must be recalculated under the Travelers' Method.

C. The Service's Imposition of the Service Method

█ Even if the court were to find that the Travelers' Method did not reflect plain-

tiff's income, the Travelers' Method would still be required in this case. For, although the Secretary has broad discretion in selecting the accounting method to be imposed when a taxpayer's method does not accurately reflect income, the breadth of that discretion is limited by its obligation to insure that the method it selects accurately reflects the taxpayer's income. In other words, as a prerequisite to invoking section 446(b), the Secretary must make a prior determination that the accounting method it selects will clearly reflect income. *See Transwestern Pipeline Company v. United States,* 79–2 U.S.Tax Cas. (CCH) P9670, 1979 WL 3942 (Ct.Cl.1979). *See also Asphalt Products Co. Inc., v. Commissioner of Internal Revenue,* 796 F.2d 843, 847 (6th Cir.1986), *rev'd on other grounds,* 482 U.S. 117, 107 S.Ct. 2275, 96 L.Ed.2d 97 (1987).

In this case, however, the Secretary failed to make such a determination. Instead, the Service Method was imposed because the auditing agent "believe[d] that the provisions of section 805(b)(4) control in that real property and stock should be valued at fair market value (current conversion value to be used) and any other asset will be the adjusted basis (historical rate to be used)." Pl.'s Ex. F–377. Defendant does not dispute this fact but contends that the Secretary's failure to invoke "the magic words" is irrelevant. Def.'s Reply Br. at 24. The court disagrees.

It is clear, from both the evidence submitted by plaintiff and defendant's own admissions, that the Service Method was imposed without regard for whether it would clearly reflect plaintiff's income.[10] It was not the absence of "magic words" that was the defect here. Rather, it was the absence of an actual decision based either upon process or substantive fact. The Secretary, like all others, is bound by the express language of a statute. In this case, the Internal Revenue Code required that the Secretary make a determi-

---

9. Mr. Andreuk was, among other things, responsible for preparing Travelers' consolidated federal income tax returns and managing Travelers' state and federal tax audits.

10. In addition to the above arguments, plaintiff contends that the Service's use of inconsistent exchange rates resulted in an arbitrary increase in plaintiff's taxable income. The court need not address this issue, however, because it is able to rule on the cross-motions on other grounds.

nation that any adjustment made to plaintiff's regularly used accounting method would clearly reflect income. The Secretary's failure to do so constituted an abuse of discretion. Plaintiff's taxable income, therefore, must be recomputed under plaintiff's regularly used accounting method as contemplated by section 446(a) of the Code.

## CONCLUSION

For the reasons stated above, the court grants plaintiff's Motion for Partial Summary Judgment and denies defendant's Cross–Motion for Partial Summary Judgment.

**IT IS SO ORDERED.**