## UNIDYNAMICS CORPORATION d/b/a Crane National Vendors, Plaintiff–Appellant,

v.

## AUTOMATIC PRODUCTS INTERNATIONAL, LTD. and Gross–Given Manufacturing Company, Inc., Defendants/Cross–Appellants.

Nos. 97–1322 to 97–1324 and 97–1375.

United States Court of Appeals, Federal Circuit.

Sept. 18, 1998.

---

William E. Lahey, Senniger, Powers, Leavitt & Roedel, of St. Louis, Missouri, argued for plaintiff–appellant. With him on the brief was Robert M. Evans, Jr.

J. Derek Vandenburgh, Merchant, Gould, Smith, Edell, Welter & Schmidt, P.A., of Minneapolis, Minnesota, argued for defendants/cross–appellants. With him on the brief was Douglas J. Williams. Of counsel was Kevin M. Abel, Bryan Cave, of St. Louis, Missouri.

Before RICH, MICHEL, and SCHALL, Circuit Judges.

RICH, Circuit Judge.

Unidynamics Corporation (Unidynamics) appeals from a summary judgment of the United States District Court for the Eastern District of Missouri holding that, as a matter of law, the LCM4 vending machines of Automatic Products International, Ltd. and Gross–Given Manufacturing Company, Inc. (collectively "Automatic Products") do not infringe Unidynamics' U.S. Patent No. 4,730,-750 ('750 patent) on a vending machine for dispensing refrigerated and unrefrigerated foods. Automatic Products cross-appeals from the summary judgment of the district court holding that as a matter of law its

LCM4 vending machines infringe Unidynamics' U.S. Design Patent No. 307,446 ('446 design patent) on a design for a vending machine for food. We affirm the district court's grant of summary judgment of noninfringement of the '750 patent, but vacate the district court's grant of summary judgment of infringement of the '446 design patent and remand for further proceedings to determine whether the LCM4 vending machines infringe the '446 design patent under the ordinary observer test.

## BACKGROUND

Unidynamics is the named assignee of both the '750 patent and the '446 design patent. Unidynamics asserts that Automatic Products' combination snack and drink dispenser, the LCM4 machine, infringes claims 1, 3–4, 6–7, and 9 of the '750 patent and infringes the '446 design patent. Both parties filed cross-motions for summary judgment on both patents. The district court held a *Markman* hearing to construe the claims of both patents.

### I. *The '750 Patent*

Independent claim 1 of the '750 patent, which is representative, reads (emphasis added on the limitation at issue):

1. A vending machine for dispensing refrigerated and unrefrigerated foods comprising:

housing means having a refrigerated storage and dispensing area for the refrigerated foods separate from an unrefrigerated storage and dispensing area for the unrefrigerated foods;

means contained in the housing means for cooling the refrigerated foods in the refrigerated storage and dispensing area;

common receiving means adjacent the refrigerated and unrefrigerated storage and dispensing areas for receiving dispensed foods from either area;

means for selecting one of the refrigerated foods or unrefrigerated foods to be dispensed to the common receiving means;

means responsive to the selecting means for dispensing the selected food to the common receiving means; and

another housing means for enclosing the refrigerated storage and dispensing area to contain the cooling, the other housing means having an opening for inserting the refrigerated foods into the refrigerated storage and dispensing area and having a door covering the opening, and *spring means tending to keep the door closed.*

The district court found the construction of the underlined claim phrase describing a refrigerated food loading door, generally used for loading drink cans, to be dispositive of Automatic Products' alleged infringement of the '750 patent. The district court found that the phrase "spring means tending to keep the door closed" contained functional language, "tending to keep the door closed," that modified *structural* language, "spring," and was thus *not* written in means-plus-function language under 35 U.S.C. § 112, ¶ 6 (1994). The district court concluded that the claim limitation required a spring that has "the effect of both keeping the door closed and closing the door, in order for the word 'tending' to have meaning within the context of the patent as a whole." *Unidyamics Corp. v. Automatic Prods. Int'l Ltd.,* No. 4:95CV1185 CDP, slip op. at 4 (E.D.Mo. Feb. 4, 1997).

Automatic Products' alleged infringing LCM4 machine has two versions, one where a magnet keeps the can loading door closed, and another later version with a padded bracket mounted on the main cabinet door of the vending machine to keep the can loading door closed when the main cabinet door of the machine is closed. The district court held that

no reasonable juror could conclude from the evidence that either a magnet or the foam pad used by defendants here is a "spring." Moreover, it is clear that neither device would "tend" to keep the door closed, that is, neither device would act as [Unidynamics'] patented spring means acts to close the door. On both versions of [Automatic Products'] LCM machine, there is a latch that holds the can door in the open position. Even if the latch is not in place, neither the magnet nor the bar acts to close the door: if the latch is used, the door stays open; if the latch is not used, gravity pulls the door into the vertical position to close it. The magnet and the bracket then keep the door closed. Under either literal infringement or the doctrine of equivalents, no genuine issues remain. [Automatic Products'] accused devices do not infringe the '750 patent as a matter of law.

*Unidynamics,* slip op. at 6. The district court granted Automatic Products' cross-motion for summary judgment of noninfringement of the '750 patent, and denied Unidyamics' motion for summary judgment of infringement of the '750 patent.

## II.  *The '446 Design Patent*

On cross-motions for summary judgment on the '446 design patent, the district court attempted to identify the "point of novelty" of the design and determined the question of infringement as a matter of law. Figure 1 of the '446 design patent is shown below.

# FIG.1

The district court stated:

> The difficulty in this case is that the figures in the '446 patent depict a fairly conventional-looking glass-front snack machine, and the Court does not believe that the overall dimensions and placement of hinges, legs, and small trim items are what [Unidynamics] sought to protect or are what the patent office sought to approve. The fact that the snack machine has areas for displaying and dispensing both snacks and sodas is not the point of novelty of the design patent, as that is functional. The point of novelty, therefore, must be the large rectangular advertising area (which happens to be on the can loading door in [Unidynamics'] preferred embodiment), as well as its placement below the snack items and above the smaller rectangular areas for displaying the types and pricing of the soda items.
>
> . . . .
>
> The areas of similarity here are the ornamental points of novelty the patent covers: the large rectangular advertising area is placed below the snack foods and above the soda selection areas in both the patent and [Automatic Products'] product. The areas of difference in [Unidynamics'] patented design and [Automatic Products'] accused product here relate either to function or to immaterial items. That is, the fact that [Automatic Products'] machine has three rows of snack foods instead of four, and places for ten different kinds of soda instead of four, is not a significant difference, because those items relate to the variety of snacks and sodas offered, which is functional, and not to the point of novelty. Similarly, the slight variations in door panel width, machine trim, and placement of the lock again are irrelevant to the point of novelty on which the patent was issued. The placement of the large rectangular advertising area on the can loading door does not make it functional, because there are numerous other ways the cans could be loaded without affecting the ornamental appearance set forth here. On the items that can be considered the point of

novelty, there is nothing left for a jury to decide, because there can be no genuine dispute regarding whether an ordinary observer would be confused: the ornamental aspects of the LCM 4 and the design covered by the '446 patent are substantially the same.

*Unidynamics,* slip op. at 7.

The district court granted Unidynamics' cross-motion for partial summary judgment that the '446 design patent is infringed by Automatic Products' LCM4 machines. The district court subsequently denied Unidynamics' motion for an injunction against Automatic Products to prevent further infringement during the pendency of this appeal. Unidynamics appealed the district court's grant of summary judgment of noninfringement of the '750 patent, and Automatic Products cross-appealed on the district court's grant of summary judgment of infringement of the '446 design patent.

## DISCUSSION

Summary judgment is properly rendered when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Johnston v. IVAC Corp.,* 885 F.2d 1574, 1576–77, 12 USPQ2d 1382, 1383 (Fed.Cir.1989). In deciding whether a genuine issue of material fact exists, the evidence must be viewed in the light most favorable to the nonmoving party with doubts resolved in its favor. *O.I. Corp. v. Tekmar Co.,* 115 F.3d 1576, 1580, 42 USPQ2d 1777, 1779 (Fed.Cir. 1997). A grant of summary judgment is reviewed *de novo. Conroy v. Reebok Int'l, Ltd.,* 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994).

To determine on summary judgment whether Automatic Products' LCM4 vending machines literally infringe any claim of either patent in suit, we first interpret the claims, and second, determine whether a reasonable

trier of fact could find that every limitation in any construed claim at issue is found in either version of the LCM4 vending machines. *Oddzon Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1404, 43 USPQ2d 1641, 1647 (Fed.Cir.1997); *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575, 34 USPQ2d 1673, 1676 (Fed.Cir.), *cert. denied*, 516 U.S. 987, 116 S.Ct. 515, 133 L.Ed.2d 424 (1995).

## I. THE '750 PATENT

### A. LITERAL INFRINGEMENT

■ The grant of summary judgment of noninfringement of the '750 patent by the district court turns on the proper construction of the claim phrase "spring means tending to keep the door closed." Claim construction is a question of law that we review *de novo. Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1174 (Fed.Cir.1998) (in banc). In defining the meaning of key terms in a claim, the court may refer to the specification, the prosecution history of a patent, prior art, and other claims. *Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics*, 976 F.2d 1559, 1566, 24 USPQ2d 1321, 1335 (Fed.Cir. 1992) (citing *Tandon Corp. v. Int'l Trade Comm'n*, 831 F.2d 1017, 1021, 4 USPQ2d 1283, 1286 (Fed.Cir.1987)).

### 1. PARTIES' ARGUMENTS

If we agree with the district court that § 112, ¶ 6 does not apply, Unidynamics asserts that the district court defined the limitation "spring means tending to keep the door closed" too narrowly. Unidynamics asserts that "spring" should be defined as "an elastic body or device that recovers its original shape when released after being distorted." *See Merriam Webster's Collegiate Dictionary* 1139 (1994).

The phrase "tending to keep the door closed" also was interpreted too narrowly in light of the written description, Unidynamics argues, to require not only keeping the door closed, but actually closing the door. There are two modes of operation of the can loading door, Unidyamics argues: (1) when the door is fully open so that drinks can be loaded, and (2) when the door is fully closed to contain the cooling and keep the drinks cold. Unidynamics argues that it is only the second mode of operation, keeping the door closed, where the spring means has any application.

When construed in this way, Unidynamics asserts that at least the compressible foam padded bracket literally meets the claim limitation "spring means tending to keep the door closed." The padded bracket is a spring, Unidynamics argues, because the pad is an elastic body or device that recovers its original shape when released after being distorted by pressure from the main cabinet door. Once the LCM4 machine is filled with drinks, the closing action of the main cabinet door, where the foam padded bracket is attached, presses the foam padded bracket against the can loading door, which in turn presses the can loading door against the refrigeration seal. This action, Unidymaics asserts, "tend[s] to keep the door closed."

Unidynamics asserts in the alternative, however, that § 112, ¶ 6 does apply; the intentional use of the word "means" in the claim phrase "spring means tending to keep the door closed" invokes § 112, ¶ 6 governing means-plus-function language. Unidynamics distinguishes *Cole v. Kimberly–Clark Corp.*, 102 F.3d 524, 41 USPQ2d 1001 (Fed.Cir. 1996), *cert. denied*, —— U.S. ——, 118 S.Ct. 56, 139 L.Ed.2d 20 (1997), relied upon by the district court to find that the limitation was merely a structural limitation not written in means-plus-function format. In *Cole*, Unidynamics argues, at least two structural limitations were associated with the means clause whereas here, the only arguably structural limitation associated with the word "means" is "spring." "Tending to keep the door closed," Unidyamics argues, is merely functional language.

Unidynamics asserts that under § 112, ¶ 6 the claimed invention covers all devices that

perform the identical function of keeping the can loading door closed, and perform this identical function with the same or equivalent structure as disclosed in the written description for performing the function, namely, a strip hinge with a spring. *See* '750 patent, col. 3, ll. 28–31. Both the magnetic latch and the padded bracket perform the identical function, Unidyamics asserts. Unidynamics also asserts that there is substantial evidence establishing that both are interchangeable with and equivalent to the structure of the spring means as described in the written description of the '750 patent. Therefore, at least an issue of fact exists as to whether both versions of the LCM4 vending machine literally infringe the '750 patent, Unidynamics asserts.[1]

Automatic Products argues that the claim phrase "spring means tending to keep the door closed" is properly interpreted as requiring a spring that "tends" to keep two elements together by exerting a biasing force over the distance between them. Therefore, although the biasing force can be overcome by a larger force in the opposite direction, when that larger force is alleviated, the biasing force pulls together two elements such as the can loading door and the housing. This construction is supported by the written description, Automatic Products asserts, which discloses only a "spring" hinge that tends to close the can loading door by exerting such a biasing force.

Applying § 112, ¶ 6 Automatic Products argues, does not change the above interpretation of the claim term, but actually narrows the claim scope. Automatic Products argues § 112, ¶ 6 would require the spring means in its LCM4 vending machine to be equivalent to the hinge spring shown in the '750 patent written description in addition to requiring a

spring that creates a tendency to bias the can loading door toward the closed position.

Under either claim construction, Automatic Products asserts that neither of its LCM4 versions using the magnetic latch or the padded bracket literally infringes the '750 patent. Unidynamics, Automatic Products argues, admits that a magnet cannot literally infringe the '750 patent because it is not a spring, nor does it exert a force which biases the can loading door to the closed position. Unidynamics does assert, however, that the padded bracket version of the LCM4 machine literally infringes the '750 patent because it is a "spring" under the district court's claim construction. To liken the padded bracket to a spring, however, Automatic Products argues, vitiates the spring limitation, because almost anything can be distorted by a small amount and resume its original shape making it a "spring" by Unidynamics' definition. A spring, however, should be understood, Automatic Products argues, to require something that provides a biasing force over a substantial range of motion. Therefore, no reasonable juror would consider the cushioning pad of a barricade bracket to be a spring. Also, the padded bracket never "tends" to keep the can loading door closed, and it is not part of the inner housing as required by the '750 patent claims because it is mounted on the main cabinet door.

### 2. ANALYSIS

■ The first claim construction issue is whether the limitation "spring means tending to keep the door closed" is a means-plus-function expression, governed by § 112, ¶ 6, which reads (emphasis is ours):

An element in a claim for a combination may be expressed as a means or step for

---

**1.** Several additional claim elements from the various asserted claims were also at issue before the district court, but not reached. These claim elements are "means contained in the housing means for cooling the drink containers in the drink container storage and dispensing area" from claims 4 and 6; "common receiving means" from claims 1 and 3; and "self-contained refrigeration unit" from claims 7 and 9.

Unidynamics argues that it is entitled to an entry of summary judgment that both versions of Automatic Products LCM4 vending machines literally infringe these claims. Because we agree with the district court that neither version of the accused LCM4 machine has a "spring means tending to keep the door closed," we also need not reach these issues.

performing a specified function without the recital of structure, material, or acts in support thereof, and *such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.*

We agree with the district court that the phrase "tending to keep the door closed" is functional language modifying "spring means." We disagree with the district court, however, that the recitation of "spring," which is structural language, takes the limitation out of the ambit of the construction dictate of § 112, ¶ 6.

■ The use of the term "means" generally (but not always) shows that the patent applicant has chosen the option of means-plus-function format invoking § 112, ¶ 6 construction. *See Greenberg v. Ethicon Endo-Surgery, Inc.,* 91 F.3d 1580, 1584, 39 USPQ2d 1783, 1786–87 (Fed.Cir.1996). The written description also supports this choice by stating that "[t]he spring 46 is an example of spring means tending to keep the door closed." '750 patent, col. 3, ll. 31–32. The recitation of the word "spring" does not vitiate the patentee's choice. *See Laitram Corp. v. Rexnord, Inc.,* 939 F.2d 1533, 1536, 19 USPQ2d 1367, 1369 (Fed.Cir.1991) ("The recitation of some structure in a means-plus-function element does not preclude the applicability of section 112, ¶ 6 [when it] merely serves to further specify the function of the means."). *But see Data Line Corp. v. Micro Techs., Inc.,* 813 F.2d 1196, 1201, 1 USPQ2d 2052, 2055 (Fed.Cir.1987) (proper means-plus-function format sets forth a means for performing a specific function without reciting any specific structure for performing that function). Our decision in *Cole v. Kimberly-Clark Corp.* also is not in conflict with our decision here.

In *Cole,* we interpreted the following claim phrase involving easily removable training pants for toilet training of toddlers: "perforation means extending from the leg band means to the waist band means through the outer impermeable layer means for tearing the outer impermeable layer means for re-

moving the training brief in case of an accident by the user." We held that the perforation means did not meet the requirement of § 112, ¶ 6 because it not only described definite structure, perforations, that supported the described function, tearing, but also described the location and extent of the structure. *Cole,* 102 F.3d at 531, 41 USPQ2d at 1006. Here, spring is the only recitation of structure with the remainder pertaining solely to the function of the means limitation.

■ We hold, however, that the district court's failure to apply § 112, ¶ 6 was merely harmless error because we reach the same result of noninfringement. The proper construction of a means-plus-function limitation requires interpreting the limitation in light of the corresponding structure, material, or acts described in the written description, and equivalents thereof, to the extent that the written description provides such disclosure. *In re Donaldson Co.,* 16 F.3d 1189, 1193, 29 USPQ2d 1845, 1848 (Fed.Cir.1994) (in banc). Structure disclosed in the specification, however, is only "corresponding" structure to the claimed means under § 112, ¶ 6 if the structure is clearly linked by the specification or the prosecution history to the function recited in the claim. *B. Braun Med., Inc. v. Abbott Lab.,* 124 F.3d 1419, 1424, 43 USPQ2d 1896, 1990 (Fed.Cir.1997); *see also Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.,* 145 F.3d 1303, 1308, 46 USPQ2d 1752, 1755–56 (Fed.Cir.1998); *Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 934, 4 USPQ2d 1737, 1739 (Fed.Cir. 1987) (in banc) ("To determine whether a claim limitation is met literally where expressed as a means for performing a stated function, the court must compare the accused structure with the disclosed structure, and must find equivalent structure as well as identity of claimed function for that structure."), *cert. denied,* 485 U.S. 961 and 1009, 108 S.Ct. 1226 and 1474, 99 L.Ed.2d 426 and 703 (1988). To determine the specific function associated with the means limitation requires construction of the claim language, which is a question of law that we review *de novo. Chiuminatta,* 145 F.3d at 1308, 46 USPQ2d at 1755.

The function of the spring means as specified in the claims is "tending to keep the door closed." The structure associated with this function is described in the written description as follows (emphasis ours):

As may best be seen in FIGS. 3, 4, and 5, the door 37 is attached to a generally rectangularly shaped housing 48 for enclosing the storage and dispensing area 7. The door 37 is mounted on *a strip hinge 47* *with spring 46 which tends to keep the door 37 in a vertical or closed position. The spring 46 is an example of spring means* tending to keep the door closed. . . . The door 37 tends to be pressed against gaskets 53 and 55 by the spring 46 to seal the storage and dispensing area 7.

'750 patent, col. 3, ll. 26 to 36.

Figure 5, reproduced below, shows the only disclosed example of the spring means.

# FIG.5

We agree with the district court that this function, when read in light of the written description, "tending to keep the door closed" requires a closing action in addition to keeping the door closed once it is in a closed position. The written description indicates that the word "tends" requires that the spring work to keep the door in a vertical or closed position to press it against gaskets to seal the storage and dispensing area. The structure described in the written description to carry out this function is a spring in a strip hinge. Section 112, ¶ 6 requires that the LCM4 vending machines have a spring, or equivalent structure, to carry out the identical function of tending to keep the door closed, but it need not be in a strip hinge. The district court correctly determined that, as a matter of law, neither the padded bracket nor the magnet perform that function. No reasonable jury could determine that either structure "tends to keep the door closed" as that function is properly interpreted because neither "tends" to close the door. Gravity performs the action of closing the door in both LCM4 versions. Therefore, neither version of the LCM4 machine literally infringes any claim of the '750 patent.

### B. DOCTRINE OF EQUIVALENTS

#### 1. PARTIES' ARGUMENTS

Unidynamics asserts that at least an issue of fact remains concerning whether the LCM4 vending machines infringe the '750 patent under the doctrine of equivalents. Unidynamics posits that in the early commercial embodiment of its vending machine described in the '750 patent, it used a magnet to keep the storage door closed providing evidence that it is interchangeable with a spring in a strip hinge. Unidynamics also offers evidence of a parts catalogue and two patents that show spring hinges and magnetic catches for use in keeping doors closed along with evidence from alleged experts in the field testifying that springs, magnets, and padded brackets are interchangeable for use in keeping a door closed. Finally, Unidynamics asserts that the sheer similarity of the design of the LCM4 vending machines to Unidynamics' commercial embodiment of the claimed '750 vending machine is evidence that Automatic Products copied Unidynamics' claimed vending machine.

Under the Supreme Court's all-elements rule as enunciated in *Warner–Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 117 S.Ct. 1040, 1045, 137 L.Ed.2d 146 (1997), Automatic Products asserts that both versions of the LCM4 machines lack an element that "tends" to keep the door closed. According to Automatic Products and the district court, the only force that tends to keep the LCM4 can loading door closed is the natural phenomenon of gravity.

#### 2. ANALYSIS

■ Under the doctrine of equivalents, "a product or process that does not literally infringe ... the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Id.* The application of the doctrine of equivalents is an objective inquiry made on a limitation-by-limitation basis. *See id.* 117 S.Ct. at 1054, 41 USPQ2d at 1876.

■ The alleged "interchangeability" of the magnet and padded bracket with the spring, while evidence of equivalence under the doctrine of equivalents, is not dispositive as Unidynamics argues. The doctrine of equivalents question involves whether the accused device is substantially different than the claimed device. A doctrine of equivalents analysis "often turns on whether the accused device performs substantially the same function, in substantially the same way, to achieve substantially the same result." *Alpex Computer Corp. v. Nintendo Co.*, 102 F.3d 1214, 1222, 40 USPQ2d 1667, 1673–74 (Fed.Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 2480, 138 L.Ed.2d 989 (1997).

We find that as a matter of law neither version of the LCM4 machines has any structure that performs substantially the same

function of "tending to keep the door closed." No reasonable jury could find that *maintaining* the can loading door in a closed position is substantially the same function as tending to keep the door closed regardless of the position it is in. Therefore, neither version of the LCM4 machines infringes the '750 patent under the doctrine of equivalents.

## II. THE '446 DESIGN PATENT

### A. PARTIES' ARGUMENTS

Automatic Products cross-appeals on the district court's grant of summary judgment that its LCM4 vending machines infringe the '446 design patent as a matter of law. Automatic Products asserts that the district court erred by merging the ordinary observer and the point of novelty tests in analyzing infringement of the '446 design patent on summary judgment. Although the ornamental design for a vending machine claimed in the '446 design patent encompasses the entire machine, the district court improperly, Automatic Products argues, looked only to an alleged "point of novelty" to determine whether the two designs are substantially the same. Automatic Products argues that all differences between the accused LCM4 machines and the patented design, not Unidynamics' commercial embodiment, must be taken into account in the factual inquiry of infringement. Because design patents have almost no scope beyond the drawings and the only evidence presented on the similarity in the overall design, according to Automatic Products, is that a vending machine purchaser would not consider the designs to be substantially the same, Automatic Products asks reversal and that summary judgment of noninfringement of the '446 design patent be granted.

Automatic Products also asserts that it deserves this grant of summary judgment because the '446 design patent is invalid. The can loading door, which the district court considered the only point of novelty, is merely functional and not ornamental, Automatic Products asserts. Therefore, the '446 patent is invalid because the positioning of the can vending unit and the arrangement of the various plain rectangles that make up the visual appearance of the can vending unit are primarily dictated by functional considerations and there are no ornamental, nonfunctional differences between the claimed design and the prior art.

### B. ANALYSIS

"A design patent only protects the novel, ornamental features of the design patented." *Oddzon*, 122 F.3d at 1405, 43 USPQ2d at 1647. In determining whether a product design infringes a design patent, two distinct tests must be applied: the ordinary observer test set forth in *Gorham Mfg. Co. v. White*, 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1871), and the point of novelty test. Under the *Gorham* test, the fact finder must determine,

if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Gorham*, 81 U.S. at 528. In determining this overall similarity of design, the ordinary observer must be deceived by the features common to the claimed and accused designs that are ornamental, not functional. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 825, 23 USPQ2d 1426, 1434 (Fed.Cir.1992) (quoting *Lee v. Dayton–Hudson Corp.*, 838 F.2d 1186, 1188, 5 USPQ2d 1625, 1627 (Fed.Cir.1988) ("[I]t is the non-functional, design aspects that are pertinent to determinations of infringement.")). The second test or the point of novelty test is distinct and requires in addition to the ordinary observer test that "the accused device must appropriate the novelty in the patented device which distinguishes it from the prior art." *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444, 221 USPQ 97, 109 (Fed.Cir.1984) (quoting *Sears, Roebuck & Co. v. Talge*, 140 F.2d 395, 396

(8th Cir.1944)). The merger of the point of novelty test and the ordinary observer test is legal error. *Sun Hill Indus. v. Easter Unlimited,* 48 F.3d 1193, 1197, 33 USPQ2d 1925, 1928 (Fed.Cir.1995).

█ The district court found that the point of novelty of the '446 design patent constituted the large rectangular advertising area and its placement below the snack items and above the smaller rectangular areas for displaying the types and pricing of drinks. The district court found that, as a matter of law, the LCM4 vending machines incorporated the point of novelty.

Automatic Products asserts that the '446 design patent is invalid because the district court's asserted point of novelty is functional and not ornamental. Automatic Products, however, misstates the district court's determination of the point of novelty; it is not the can loading door itself, which we agree is functional, but the advertising space on the can loading door and its position relative to the snack foods and soda areas. We agree with the district court that this is the nonfunctional point of novelty that distinguishes it from previous prior art such as the Rowe vending machines.

In applying the ordinary observer test, however, the district court looked only to the point of novelty. The district court ignored other ornamental features such as the slight variations in door panel width, machine trim, and placement of the lock because it found they were irrelevant to the point of novelty. The district court concluded, "[o]n the items that can be considered the point of novelty, there is nothing left for a jury to decide, because there can be no genuine dispute regarding whether an ordinary observer would be confused: the ornamental aspects of the LCM4 and the design covered by the '446 patent are substantially the same." This merging of the ordinary observer and the point of novelty tests was legal error.

█ Automatic Products also asserts that the district court erred in dismissing its unenforceability defense because Unidynamics failed to cite its previous machine, the Snacktron II, which was allegedly substantially closer in appearance than the prior art cited to the examiner and failed to cite the related utility application that issued as the '750 patent. Snacktron II is identical to the '446 design, except for the substitution of a can vending unit for the bottom two rows of snack spirals, Automatic Products asserts. Unidynamics counters this argument by asserting that its Snacktron II is merely cumulative of the Rowe prior art that it cited during prosecution. We agree with Unidynamics.

Neither Rowe nor the Snacktron II contain the point of novelty. Both have several rows for dispensing unrefrigerated foods with no advertising area. The Snacktron II would have been merely cumulative of the Rowe vending machines.

Automatic Products asserts that by failing to cite the utility application corresponding to the '750 patent, Unidynamics prevented the examiner of the '446 design patent from fully considering the issue of functionality. Automatic Products argues that "only upon reading the '750 patent does it become evident that the various rectangles shown in the can vending unit of the '446 patent correspond to specific functional elements, such as doors, labels, etc."

This argument is akin to Automatic Products' argument that the district court's asserted point of novelty is functional. As we stated earlier, the point of novelty is not the can loading door or the advertising labels themselves, but their arrangement. The arrangement described in the '750 patent, which Automatic Products asserts is functional, does not describe this point of novelty. The arrangement in the '750 patent describes the placement of the common receiving means for the snacks and drinks adjacent to the refrigerated storage area situated below the unrefrigerated area. Therefore, we affirm the district court decision that, as a matter of law, there was no inequitable conduct.

We vacate the district court's grant of summary judgment of infringement of

the '446 design patent, and remand for application of the ordinary observer test of infringement.[2]

## CONCLUSION

For the above reasons, we affirm the district court's grant of summary judgment of noninfringment of the '750 patent, and vacate the district court's grant of summary judgment of infringement of the '446 design patent and remand to the district court.

*AFFIRMED–IN–PART, VACATED–IN–PART, AND REMANDED.*

---

**2.** Unidynamics asserts that the district court abused its discretion in not entering an injunction against Automatic Products' further infringement of the '446 design patent. We need not reach this issue.