The TRAVELERS INSURANCE
COMPANY, Plaintiff,

v.

The UNITED STATES, Defendant.

Nos. 88–494T, 89–262T, 96–543T.

United States Court of Federal Claims.

Aug. 1, 2006.

Peter H. Winslow, Scribner, Hall & Thompson, LLP, Washington, D.C. for Plaintiff.

Stuart J. Bassin, Department of Justice (Tax Division), Washington, D.C. for Defendant.

## *OPINION*

SMITH, Senior Judge.

These consolidated cases, involving refund claims of $1,527,247 in income taxes and interest, present the most recent round of litigation in a complex federal income tax dispute that has been ongoing for almost two decades. In case numbers 88–494T and 89–262T (1988 and 1989 cases), this Court has previously published two opinions dealing with the tax dispute between Travelers and the United States relating to the IRS' audit of Travelers' tax returns in the late 1970s and early 1980s.[1] *Travelers Ins. Co. v. United States,* 28 Fed.Cl. 602 (1993) *[Travelers I]; Travelers Ins. Co. v. United States,* 35 Fed. Cl. 138 (1996) *[Travelers II].* The Federal Circuit has also published two opinions regarding these cases. *Travelers Ins. Co. v. United States,* 303 F.3d 1373 (Fed.Cir.2002) *[Travelers III]; Travelers Ins. Co. v. United States,* 319 F.3d 1380 (Fed.Cir.2003) *[Travelers IV].*[2] The 1988 and 1989 cases were remanded to this Court for the limited purpose of determining whether a computational error was made in determining Travelers' tax posture in 1975 and 1978. The parties have settled this matter and, therefore, the remanded issue in the 1988 and 1989 cases is

no longer before this Court. *See* Joint Status Report, filed March 23, 2005.

However, a third case exists, case number 96–543T (1996 case),[3] presenting the same foreign tax credit issues that were decided in the 1988 and 1989 cases.[4] The Government filed a motion for summary judgment in the 1996 case following the Federal Circuit's decision. In response, Travelers filed its cross-motion for summary judgment in the 1996 case and included issues that were, in its opinion, unresolved in the 1988 and 1989 cases.

First, Travelers continues to argue that it is entitled to a refund in the 1988 and 1989 cases on taxes it paid on an Indonesian oil venture. Travelers alleges that this Court, in *Travelers I,* held that Travelers' tax deferral of 50% excess gain from operations over taxable investment income (excess GFO argument) related to its United States underwriting income and did not reduce Travelers' foreign tax credit for its Indonesian oil venture. Travelers alleges that the Government did not appeal this issue for the 1988 and 1989 cases, and thus waived it for tax years 1976–1977 and 1979–1980. Therefore, in the 1996 case Travelers asserts that the Government is collaterally estopped from litigating the issue for tax years 1981–1983.

The Government disagrees and makes five arguments as to excess GFO issue, as follows: First, this Court did not make an independent holding on the issue in *Travelers I.* Second, the record shows that it had appealed the issue. Third, the logic of *Travelers III* implicitly reversed this Court's position on the issue. Fourth, Travelers' already presented its argument that the issue had not been appealed during its petition for panel rehearing. Fifth, the Federal Circuit's holding in *Travelers IV* rejected Travelers' request that the issue should be remanded, foreclosing further consideration of the issue.

---

1. A third opinion relating to the 1988 and 1989 cases, *Travelers Ins. Co. v. United States,* 46 Fed. Cl. 458 (2000), addressed a premium prepayment issue that is not now before the Court.

2. For ease of discussion, these cases will be referred hereinafter as *Travelers I–IV,* respectively.

3. Case number 96–543T relates to Travelers tax returns for 1981–1983. Neither the computation error issue nor the premium prepayment issue are present during this period.

4. The Court hereby consolidates case number 96–543T with 88–494T and 89–262T for all purposes.

The Court has carefully reviewed the parties' briefs, oral arguments, and supporting documents. After consideration, the Court agrees with the Government. Therefore, the Court finds that the Federal Circuit's determination of the excess GFO issue in the 1988 and 1989 cases—in the Government's favor—mandates this Court, in conjunction with *Travelers III's* disposition of the policyholders' share issue, to enter summary judgment in favor of the Government on all foreign tax credit issues in the 1996 case.

Second, Travelers raises an issue concerning the accounting method the Internal Revenue Service (IRS) used to translate Travelers' income from its Canadian branch into United States dollars. Travelers contends that the Federal Circuit, in its opinion in *Travelers III,* held that the IRS could properly require Travelers to use the established profit and loss method and rejected the notion that I.R.C. § 805 (1976) required the use of historical exchange rates to determine earnings on assets. Travelers requests this Court find that the implementation of *Travelers III* requires the computation of its Canadian branch income using the established profit and loss method with only current exchange rates. On the other hand, the Government contends that the Federal Circuit rejected Travelers' position on the currency translation issue, arguing that the essence of *Travelers III* was that the IRS should be given deference in determining whether an accounting method reflects income. It is clear that Travelers presented the same currency translation argument during its petition for panel rehearing on appeal that it now makes before this Court. The Federal Circuit unambiguously rejected the suggestion that its treatment of the foreign translation issue was inconsistent. Therefore, the Court agrees with the Government that the issue may not now be considered.

## BACKGROUND

The factual and legal background of this litigation has been explained in prior decisions of this Court and the Federal Circuit. Because this case turns on the interpretation of this Court's holding in *Travelers I* and the record of the 1988 and 1989 cases on appeal, a detailed discussion of the substantive legal issues is unnecessary and, therefore, is omitted here. The Court limits its background section to the case's procedural history outlined below.

### A. *Travelers I* and *II*

This tax case began in 1988 and 1989 when Travelers filed complaints in this Court challenging the IRS determination of its foreign source taxable income for purposes of its allowable credit for taxes paid to Indonesia for 1975–1980. In addition, Travelers also sought a finding that its method of translating profit and losses from its Canadian operation from 1974 to 1980 clearly reflected income and that the IRS had abused its discretion when it required Travelers to change its accounting method. Due to the complex nature of the cases, two opinions were published. In *Travelers I,* this Court addressed Travelers' foreign source taxable income for the purpose of its allowable credit for taxes paid to Indonesia for tax years 1975–1980. The case turned on the characterization of the policyholders' share as an exclusion or as a deduction of income. Its was held in Travelers' favor on the grounds that the policyholders' share was a deduction and was properly allocated to Travelers' gross domestic insurance business and not to its Indonesian oil investments under Treas. Reg. § 1.861–8(b)(2). *Travelers I,* 28 Fed.Cl. at 614. In a footnote, this Court held, that the "excess GFO deduction" was similarly sourced. *Id.* at 614 n. 22. In *Travelers II,* the Court addressed the accounting method Travelers used to translate its taxable income from its Canadian branch for tax years 1974–1980. The question before the Court was whether Travelers' accounting method clearly reflected income and whether the IRS abused its discretion in requiring Travelers to adopt its own method of accounting. *Id.* This Court found that the Government failed to show that Travelers' method of accounting did not accurately reflect its Canadian branch income for tax years 1977 through 1980. *Id.* at 145. Thus, the IRS acted outside of the scope of its statutory authority by requiring Travelers to use the IRS substitute accounting method. *Id.*

## B. *Travelers III*

The Government appealed *Travelers I* and *II* to the Federal Circuit. In *Travelers III*, the Federal Circuit held that on the foreign tax credit issue the statute explicitly provided for the exclusion of the policyholders' share from the calculation of Travelers' life insurance company taxable income. *Id.* at 1374. As such, Travelers could not include the policyholders' share as taxable income for the purpose of calculating its foreign tax credit for taxes paid to Indonesia. On the foreign currency translation issue, the Federal Circuit found that the IRS did not abuse its discretion in finding that Travelers' method did not clearly reflect income and substituting its own methodology. *Id.* at 1383. However, the Federal Circuit rejected the Government's argument that § 805 required the use of historical exchange rates to determine the basis of bonds, mortgages, and joint venture assets. Nevertheless, the Court concluded that the IRS could properly use historical exchange rates, as a matter of discretion, to capture gains attributable to the purchase of capital assets in depreciated foreign currency. *Id.* at 1383. The Federal Circuit's opinion sustained the IRS' calculation of Travelers' income.

## C. *Travelers IV*

Travelers petitioned for panel rehearing after the Federal Circuit reached its decision, arguing that it was still entitled to a refund despite the Court's opinion for two reasons.

### 1) Foreign Tax Credit Issue

On the foreign tax credit issue, Travelers raised two arguments.[5] First, Travelers' tax base under § 802(b) was gain from operations and not taxable investment income in tax years 1975 and 1978. Travelers asserted

that the tax base was different for these two years because the company had negative underwriting income for those years. Second, Travelers asserted that the Government did not appeal this Court's "holding" that excess GFO were properly sourced to the United States and could not reduce Indonesian income. Thus, Travelers urged that it was entitled to a refund on the excess GFO in tax years 1976–1977 and 1979–1980 (years where Travelers had positive underwriting income). (Pl.-Appellee's Pet. for Reh'g at 4–6.)

### 2) Foreign Currency Translations Issue

On the foreign currency translation issue, Travelers contended that the Federal Circuit's analysis on the issue was inconsistent with its holding (i.e., finding that the IRS could require the use of the established profit and loss method to capture current earnings but allowing the IRS to use both historical and current exchange rates). Travelers argued that existing case law prevented the IRS from changing a taxpayer's accounting method to a method that did not clearly reflect income.[6] Moreover, Travelers argued that the language in *Travelers III* asserting that the IRS could use historical exchange rates to capture gains attributable to the purchase of capital assets was merely dicta[7] because the statement applied to the net worth method and not to the profit and loss method. (Pl.-Appellee's Pet. for Reh'g at 7–15.)

### 3) *Travelers IV* Decision

Granting in part and denying in part, the Federal Circuit held that there was a computational error made by the IRS in tax years 1975 and 1978. The case was remanded for the limited purpose of addressing this error. The Federal Circuit specifically rejected

---

5. After *Travelers III* was issued, Travelers contended that the opinion erred when it stated: "If the policyholders' [share] were an exclusion, both the taxpayer and government agreed that the policyholders' share should be excluded from the numerator and denominator of the section 904 fraction, *and that no refund was due.*" Travelers requested that this sentence be deleted from the record. (Pl.-Appellee's Pet. for Reh'g at 1–2) (citing *Travelers III*, 303 F.3d at 1377). The Federal Circuit denied this request, choosing to

consider the matter during Travelers' petition for panel rehearing.

6. *Dana Corp. v. United States,* 174 F.3d 1344 (Fed.Cir.1999); *Dayton Hudson Corp. v. Commissioner of Internal Revenue,* 153 F.3d 660 (8th Cir.1998); *Harden v. Comm'r,* 223 F.2d 418 (10th Cir.1955); *Loftin & Woodard, Inc. v. United States,* 577 F.2d 1206 (5th Cir.1978).

7. *Travelers III,* 303 F.3d at 1383.

Travelers' request to have the excess GFO and foreign currency translation issues remanded to this Court. *Id.* at 1380 & n. 1, 1381.

### D) 1996 Case

In 1996, Travelers filed a third complaint raising the same foreign tax credit issues for tax years 1981 and 1983 that were before this Court in case numbers 88–494T and 89–262 for tax years 1975–1980. After *Travelers IV* was issued, the Government moved for summary judgment on the policyholders' share issue in 1981 and 1983.[8] Thereafter, Travelers cross-moved for summary judgment not only on the IRS' computational errors, which were remanded to this Court, but resurrected legal issues, claiming that the excess GFO issue had not been appealed and that portions of *Travelers III* were inconsistent. Specifically, Travelers moved for summary judgment on the excess GFO issue and currency translation issues in the 1988 and 1989 cases.[9] Travelers argued that the government was collaterally estopped on the excess GFO issue in the 1996 case. The parties settled the computational error issue that was before this Court on the Federal Circuit's remand in *Travelers IV*. Thus, the issues currently in dispute are the excess GFO issue for all three cases and the currency translation issue for the 1988 and 1989 cases. These two issues are considered in turn below.

### STANDARD OF REVIEW

Summary judgment is warranted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1562–63 (Fed.Cir.1987). Genuine disputes of material fact that may significantly affect the outcome of the matter preclude

8. This Court hereby consolidates the three cases for all purposes.

9. In addition to the two issues raised in this opinion, Travelers moved for summary judgment on a prepayment of taxes issue. This Court entered partial summary judgment—in Travelers'

an entry of judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202; *Unidynamics Corps. v. Automatic Prods. Int'l.,* 157 F.3d 1311, 1316 (Fed.Cir.1998). A genuine dispute concerning a material fact exists when the evidence presented would permit a reasonable jury to find in favor of the non-movant. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The non-movant must establish the existence of a material element on which the party will bear the burden of proof. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548; *Crown Operations Int'l v. Solutia Inc.,* 289 F.3d 1367, 1377 (Fed.Cir.2002) (quoting *Celotex*). The benefit of all reasonable presumptions and inferences runs to the party opposing summary judgment. *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538; *Monon Corp. v. Stoughton Trailers, Inc.,* 239 F.3d 1253, 1257 (Fed.Cir.2001). The Court may neither make credibility determinations nor weigh the evidence and seek to determine the truth of the matter. *Anderson,* 477 U.S. at 242, 255, 106 S.Ct. 2505; *Rockwell Int'l Corp. v. United States,* 147 F.3d 1358, 1361 (Fed.Cir.1998). The purpose of summary judgment is " 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

### DISCUSSION

### A. Foreign Tax Credit

### 1) Interpretation of this Court's Treatment of the Excess GFO Issue in *Travelers I*

Travelers asserts that this Court held that Travelers' tax deferral of 50% excess GFO over taxable investment income was properly sourced to the United States. This, therefore, did not reduce Travelers' foreign tax credit for its Indonesian oil venture. This holding is found in footnote 22.

favor—when the Government conceded the issue. *See* Joint Status Report and Stipulation of Fact Regarding Amount of Partial Summary Judgment, filed February 24, 2004; Order to Enter Partial Summary Judgment, filed March 30, 2004.

During the original proceedings before this Court, Travelers asserted that neither excess GFO nor the policyholders' share were allocable to its Indonesian oil gross income under general sourcing rules found in Treas. Reg. § 1.861–8. *Travelers I*, 28 Fed.Cl. at 611. Travelers' position on the issues had a subtle difference. On the excess GFO issue, Travelers contended that the Government could not source this income to Indonesia because gain from operations, under general source rules, related to Travelers' insurance activities in the United States.[10] After all, Travelers was not underwriting policies in Indonesia, nor collecting premiums from policyholders in that country. According to Travelers, excess GFO should be sourced to the United States regardless of its classification as a deduction, exclusion, or deferral of income. On the policyholders' share issue, Travelers alleged that the Government could not source this income to Indonesia because the policyholders' share was part of the reserve for the payment of future policyholders' insurance claims. This was a matter of statutory analysis. Travelers asserted that this share must be treated consistently with a separate deduction for reserve increases and policy benefits, which were sourced to the United States. Travelers argument on the issue turned on the policyholders' share being characterized as the functional equivalent of a deduction and not as an exclusion.

The Government argued during the original proceeding that the excess GFO was either an exclusion or a deferral of income and that the policyholders' share was an exclusion of income but, in either case, § 1.861–8 was inapplicable. Thus, the key difference between the parties' treatment of the two issues was that the Government claimed that both issues turned on classifying them as a deduction on the one hand or as an exclusion or deferral of income, on the other hand. Neither an exclusion nor a deferral of income could be included in Travelers' calculation of life insurance company taxable income.

*Travelers I* divided the discussion of the issues into two parts. The first part's treatment of the excess GFO issue was limited. The opinion combined its analysis of the two issues, however, when it concluded: "The dispute over what may be properly termed a deduction or exclusion is central to the policyholders' share issue in this case. Therefore, the court will consider the parties' excess GFO arguments in that context below." *Id.* at 611. The second part explained, for several pages, why the policyholders' share was properly characterized as the functional equivalent of a deduction, despite the Government's argument that the statutes in question labeled it as an exclusion. The opinion's treatment of the two issues concluded:

> As the court has determined that the policyholders' share is directly related to the deduction for reserves, the deduction sourcing rule of Treas. Reg. § 1.861–8(b) applies. [n22] Thus, the policyholders' share is properly allocated to Travelers' gross income from its domestic insurance business and not to its Indonesian oil investment activities.
>
> ---
>
> n22 Because the excess GFO deduction discussed above is attributable to gross income derived from insurance activities, it is similarly sourced under Treas. Reg. § 1.861–8(b)(2).

*Id.* at 614 & n. 22. Travelers' primary contention is that *Travelers I* treated the excess GFO and policyholders' share as separate issues and that the opinion made independent holdings. Travelers believes that the Court's use of a footnote supports its position that the opinion treated excess GFO as a distinct adjustment. The Government counters that the excess GFO issue was subsumed under the discussion of the policyholders' share issue, and that the footnote in question cannot be properly characterized as an independent holding of this Court.

This Court's opinion treated the distinction between a deduction and an exclusion as being central to the disposition of both issues. *Travelers I* made this explicit when it subsumed the discussion of the excess GFO issue under the policyholders' share subsection. Furthermore, the opinion used the phrase "excess GFO deduction," a term

---

**10.** Travelers also alleged that the Government's independent calculation of excess GFO without regard to the denominator or the foreign tax credit fraction distorted Travelers' income.

coined by the Court, in the footnote in question. This Court specifically labeled excess GFO as a deduction, which the Government objected to on appeal, because it believed that the classification of the adjustment as a deduction was important to the disposition of the issue. It is of no moment that Travelers argued at the time that it would be entitled to source excess GFO to the United States regardless of the its classification. The opinion did not adopt this position. The fact that the Court could have made a separate holding, supported by an independent line of analysis, does not mean that the Court did so.

### 2) Government's Appeal of the Excess GFO Issue to the Federal Circuit

The Court now turns to the question of whether the Government failed to appeal the issue to the Federal Circuit and thereby waived the issue. To come to a conclusion on the question, it is necessary to examine the parties' treatment of the issue on appeal to the Federal Circuit. In many ways, to describe the record on appeal is to decide the issue.

When the Government appealed to the Federal Circuit, it noted that the question presented with regards to the calculation of Travelers' foreign tax credit was whether this Court erred in finding that Travelers did not have to exclude the policyholders' share of investment yield from the calculation of its foreign tax credit. (Def.-Appellant's Br. at 1–2.) The Government's opening brief did not mention the excess GFO issue until much later when it challenged this Court's finding on the issue in a footnote:

> Another significant flaw in the court's opinion is its discussion of what it called the "excess gain from operations deduction." As noted, where a life insurance company's gain from operations exceeds its taxable investment income, its life insurance company taxable income is equal to taxable investment income plus one-half of the excess of gain from operations over taxable investment income. (The other half may or may not be taxed in a later year.) In its opinion, the court coins the term "excess gain from operations deduc-

tion" to refer to this other (not currently taxed) half of the excess of gain from operations over taxable investment income, and purports to allocate this "deduction" to United States-source income.

> The court's analysis is wholly misconceived. The Section 904 limitation fraction uses the term "taxable income," which Section 841 states should be read, in the case of a life insurance company, as "life insurance company taxable income." "Life insurance company taxable income," in turn, is defined in Section 802(b) as gain from operations, if it is less than taxable investment income, or, if it is not, taxable investment income plus one-half of the excess of gain from operations over taxable investment income. (Although there may be, in some situations, a Phase III tax base, the parties agreed that there was no Phase III income here.) The other half of the excess of gain from operations over taxable investment income is not a "deduction"; rather, it simply does *not enter into* the computation of life insurance company taxable income, and thus does not enter into "taxable income" as that term is used in the Section 904 fraction. Accordingly, it has nothing to do with this case.

(Def.-Appellant's Br. at 41 n. 8.) The Government again raised the excess GFO issue in its reply brief when it criticized Travelers' position on the issue and noted:

> Taxpayer's novel analysis is entirely without merit. Section 904 . . . provides that the limitation fraction is foreign source "taxable income" means "the life insurance company taxable income (as defined in section 802(b))." [listing of section 802 omitted]. Thus, under the plain meaning language of section 802(b), taxpayer's life insurance company taxable income for 1976, 1977, 1979, and 1980, when its gain from operations exceeded taxable investment income was not a "deduction;" the amount did not enter into the computation of life insurance company taxable income, and therefore did not enter into "taxable income" as that term is used in the Section 904 fraction. The amount, therefore, has no bearing on this case. [n8]

n8 Taxpayer's contention that the Government "does not appeal this aspect of the court's holding" is spurious.

(Def.-Appellant's Re. Br. at 11–12.) Travelers' primary contention is that the Government did not appeal the excess GFO issue because the Government did not clearly identify the matter as an issue before the Federal Circuit. Rule 28 of the Federal Rules of Appellate Procedure requires that the Appellant's brief set forth a statement of the issues presented for review and that an issue not raised in the Appellant's opening brief may be deemed waived. Travelers contends that an issue discussed in a footnote, according to a commentary on the rule, does not constitute a proper appeal.[11] As such, the Government's treatment of the excess GFO issue in a footnote of its initial brief to the Federal Circuit is not a proper appeal. In addition, an appellee's discussion of an issue in its response does not raise a matter on appeal.

First, Travelers argues that the correct interpretation of the footnote in the Government's initial appellate brief supports its case. Second, it argues that the meaning of the Government footnote, which states its position that "[the issue] has nothing to do with this case," should be read to mean that the issue was not before the Federal Circuit (Pl. Cross-mot. for Summ. J. at 15) (citing Def.-Appellant's Br. at 41 n. 8.). Therefore, according to Travelers, the issue is still before this Court. Travelers further supports this contention with the Government's statement in its response to a motion to strike that the "sole issue" before the Federal Circuit was the policyholders' share issue. Id. at 17 (citing Def.-Appellant's Resp. Mot. Strike at 9.) These statements, according to Travelers, suggest that the Government conceded that the case would have to be remanded to address the excess GFO issue which was merely a computational matter.

From the Court's point of view, this is an extreme example of logical gymnastics. It is very inventive but clearly wrong.

The reason the Government did not appeal the issue, Travelers alleges, is that the Government's position on the excess GFO issue was inconsistent with its position on the policyholders' share issue, which was one of the main issues on appeal.[12] Therefore, the Government made the strategic decision to only appeal the policyholders' share issue, as it involved a larger income tax refund claim.

The Government counters that it properly raised the excess GFO issue and explained in its initial brief to the Federal Circuit why this Court's treatment of the issue should be rejected. In its appellate reply brief the Government argued that excess GFO tax deferral should be excluded from life insurance taxable income under the plain meaning of §§ 804 and 809. This, of course, is the same argument that the Government used to explain why the policyholders' share should be excluded from the calculation of Travelers' tax credit. According to the Government, it would require a creative interpretation of the footnote in its opening brief to find that the Government challenged this Court's position on excess GFO in both its briefs to the Federal Circuit and then abandoned the issue without explanation, especially when its opposition to the policyholders' share and excess GFO issues were the same.

Travelers is correct that an issue not raised by an appellant in its opening brief is deemed waived. E.g., Carbino v. West, 168 F.3d 32, 34 (Fed.Cir.1999) ("[C]ourts have consistently concluded that the failure of an appellant to include an issue or an argument in the opening brief will be deemed a waiver of the issue or argument") (citing Becton Dickinson & Co. v. C.R. Bard, Inc., 922 F.2d 792, 800 (Fed.Cir.1990)). Travelers

11. The National Institute of Trial Advocacy's Commentary regarding Rule 28 of Federal Rules of Appellate Procedure states, "An issue not raised in appellant's opening brief may be deemed waived—mentioning it in a footnote is not enough!" US NITA Fed Rules App Proc R 28.

12. Travelers specifically alleged: "[T]he government's primary argument on appeal was that the numerator of the FTC limitation fraction could

not include the policyholders' share because it was excluded from the denominator of the fraction (worldwide LICTI). However, on the Excess GFO issue the Government's reduction in Indonesian-source income for 50% Excess GFO in the numerator of the FTC fraction bears no relationship to the actual 50% Excess GFO in the denominator (actual worldwide LICTI)." (Pl. Cross-mot. for Summ. J. at 16.)

is also correct to note that arguments raised in a reply brief are not properly raised before a court of appeal. *E.g., Norman v. United States*, 429 F.3d 1081, 1091 (Fed.Cir. 2005). These rules of federal appellate procedure, however, are "not governed by a rigid rule but may as a matter of discretion not be adhered to where circumstances indicate that it would result in basically unfair procedure." *Becton Dickinson*, 922 F.2d at 800.

The record, although not entirely one-sided, indicates that the Government contested the excess GFO issue on appeal. The position that an issue cannot be raised in a footnote on appeal is a sound rule for the efficient management of appellate procedure, as it narrows the scope of issues presented. However, this Court would engage in a strained interpretation of its own opinion to find that it made an independent holding beyond footnote 22 on the excess GFO issue. This is so, of course, because the analysis of this Court of the policyholders' share issue was equally applicable to the GFO issue. As such, given the complexity of the litigation, which was originally a $30 million dollar income tax refund case, it is understandable that the Government addressed the excess GFO issue in a footnote given that the issue itself was decided in a footnote in *Travelers I*. Under these circumstances, it is inappropriate to adopt Travelers' view that the Government failed to appeal the issue to the Federal Circuit. However, this Court's unwillingness to reconsider the excess GFO issue on remand does not turn only on its interpretation of the record on appeal, as the Federal Circuit considered this matter.

### 3) Federal Circuit's Remand Order

The Federal Circuit did not address the excess GFO issue in *Travelers III*. Thus, Travelers petitioned for panel rehearing and asserted that the Federal Circuit opinion failed to address several issues relating to Travelers' foreign tax credit, to include its excess GFO argument. Travelers' petition stated:

> Travelers argued in the court below that the reduction of taxable income for 50% of underwriting income should be treated ei-

ther as an exclusion of U.S. sourced underwriting income or as a deduction allocable to U.S. underwriting income. No portion of the exclusion or deduction of 50% underwriting income should be allocated to Indonesia. The court below held that excess GFO relates to U.S. underwriting income and does not reduce Indonesia-sourced income. The Government did not appeal this aspect of the lower court's holding. As a result, Traveler's foreign tax credits for 1976–1977 and 1979–1980 need to be recomputated on remand.

(Pl.-Appellee's Pet. for Reh'g at 5.) The Government's response to the petition for rehearing made its now-familiar counter-arguments to the issue and concluded by stating:

> The bottom line is that the taxpayer's "excess GFO" argument has no validity after [the Federal Circuit's] disposition of the policyholders' share issue. In suggesting that it may be entitled to a refund on that issue on remand, taxpayer is simply trying to make an end-run around this Court's holding.

(Def.-Appellant's Res. Pet. for Reh'g at 8.) The Federal Circuit, in a one-page opinion, denied in part, Travelers' petition for panel rehearing. The opinion specifically addressed Travelers' excess GFO argument when it stated: "[W]e reject taxpayer's contention that a remand is required to address other issues concerning the foreign tax credit issue." *Travelers IV*, 319 F.3d at 1380. The footnote to this sentence observed: "Travelers argues that 1) it is 'entitled to deduct or exclude from its tax base under [26 U.S.C. § ] 802(b) 50% of its [positive] excess underwriting income' for the periods from 1976–1977 and 1979–1980...." *Id.* at 1380 & n. 1. Travelers urges this Court to interpret the Federal Circuit's remand order to mean that no further proceedings on the merits of the excess GFO issue were necessary to implement this Court's finding because the Federal Circuit had adopted Travelers' position that the issue was not appealed.

 The only reasonable interpretation of the Federal Circuit's order is that the court rejected Travelers' position. The court would simply not have used the language "we reject the taxpayer's contention" if it was

somehow affirming Travelers' position that the excess GFO issue was not appealed and remained untouched by the court's reversal of the policyholders' share issue. *Id.* Accepting Traveler's position would contradict the Federal Circuit's mandate. This we may not do. *E.g., Coltec Indus., Inc. v. United States,* 454 F.3d 1340, 1353 (Fed.Cir.2006). Therefore, the doctrine of the law of the case precludes further consideration of the issue. The doctrine is well summarized in the following:

> The law of the case is a judicially created doctrine, the purposes of which are to prevent the relitigation of issues that have been decided and to ensure that trial courts follow the decisions of appellate courts. The doctrine requires a court to follow the decision on a question made previously during the case.... When a judgment of a trial court has been appealed, the decision of the appellate court determines the law of the case, and the trial court cannot depart from it on remand.... Orderly and efficient case administration suggests that questions once decided not be subject to continued argument, but the court has the power to reconsider its decisions until a judgment is entered.

*Exxon Corp. v. United States,* 931 F.2d 874, 877 (Fed.Cir.1991) (citation omitted). The doctrine, of course, does not constrain a trial court's consideration of an issue that has not been considered on appeal. *Id.* But the doctrine extends to issues that were implicitly addressed. *E.g., W.L. Gore & Associates, Inc. v. Garlock, Inc.,* 842 F.2d 1275, 1278 (Fed.Cir.1988) (The doctrine [of the law of the case] applies not only to issues discussed and decided but also those decided by necessary implication) (citations omitted).

■ Having accepted the Government's position on the policyholders' share issue, the Federal Circuit also accepted the Government's position, by implication, that excess GFO was also excluded from the definition of life insurance company taxable income for the purpose of calculating Travelers' foreign tax credit. The Federal Circuit made it clear in its remand order that it rejected Travelers' excess GFO argument. *Travelers IV,* 319 F.3d at 1380. Having failed to persuade the Federal Circuit on the excess GFO issue, Travelers now recycles the same arguments before this Court. Given the Federal Circuit's mandate that the excess GFO issue was not to be considered on remand, which cannot be reasonably interpreted in Travelers' favor, this Court declines to consider the issue further. *See Coltec,* 454 F.3d at 1353.

### B. Currency Translation

■ The main question relating to the currency translation issue is whether the Federal Circuit's decision requires Travelers' income from its Canadian branch to be computed by use of the established profit and loss method using current exchange rates.

Travelers contends that the foreign currency translation issue is a matter of implementing the Federal Circuit's decision on the issue in *Travelers III.* Travelers urges this Court to adopt the following interpretation of the Federal Circuit's decision. First, the IRS can properly require the use of the established profit and loss method. Second, § 805 does not require the use of historical exchange rates to determine current and average earnings rates. Finally, the Court's language that the IRS could use historical exchange rates to capture current gain or loss in assets for the net worth accounting method is dicta because the IRS method did not use the net worth method.

The problem with Travelers' interpretation of the Federal Circuit's disposition of the foreign currency translation issue is the court had an opportunity to change its opinion in *Travelers IV* but declined to do so. In its petition for panel rehearing Travelers argued:

> To correct these misapprehensions and the inconsistencies between the Court's analysis and its holding, we suggest that the Court revise its opinion to conform with the facts. Consistent with the Court's opinion, in the court below on remand, the IRS would be accorded the discretion to require Travelers to use a method of its choosing that clearly reflects income, including a method that uses historical exchange rates for the purpose described in the Court's opinion.

(Appellee's Pet. for Reh'g at 14.) The Federal Circuit dismissed Travelers' position that *Travelers III* opinion reasoning was inconsistent with its holding stating: "[T]axpayer also seeks reconsideration of our decision with respects to the foreign currency translation issue. Taxpayer has not offered sufficient reason to reconsider that decision, and we decline to do so." 319 F.3d at 1380–81. The Federal Circuit ordered that "The case is remanded to the Court of Federal Claims for the limited purpose of determining whether the IRS made a computational error with respect to the 1975 and 1978 taxable years." *Id.* This Court finds that it lacks the authority to consider the issue on remand. To follow Travelers' suggestion to implement the Federal Circuit's opinion according to its "true meaning" would directly contradict the Federal Circuit's mandate. *See, e.g., Northern Helex Co. v. United States,* 225 Ct.Cl. 194, 634 F.2d 557 (1980). In *Northern Helex,* an *en banc* panel of the Court of Claims reversed the trial judge's decision to award damages to a vendor in a contracts dispute with the Government, holding that awarded damages were excessive. *Id.* On remand, the trial judge justified increasing the vendor's damages by $16 million dollars under the theory that portions of the panel's prior opinions were inconsistent with each other. *Id.* at 198, 634 F.2d 557. The Court of Federal Claims observed:

> It was not the province of the trial judge to ignore the critical and considered rulings in [the Court's prior decision] because he deemed them inconsistent with the earlier decision or found them unconvincing. If the trial judge had doubts about what [the prior decision] held or required him to do on the remand, he could have requested further guidance from the court.

*Id.* at 199, 634 F.2d 557. *See also Coltec,* 454 F.3d at 1353, (*citing Strickland v. United States,* 423 F.3d 1335, 1338 & n. 3 (Fed.Cir. 2005)). While Travelers makes an argument that portions of the Federal Circuit's opinion are inconsistent, the Federal Circuit's remand order makes it clear that the court rejected this view.

## CONCLUSION

For the reasons set forth above, the law of the case prevents this Court from considering Travelers' cross-motion for summary judgment on the 50% excess gain from operations over taxable investment income issue for tax years 1976–1977 and 1979–1980 and the foreign currency translation issue for tax years 1977–1980.

The Federal Circuit's rejection of Travelers' excess GFO issue on appeal also requires this Court, applying the doctrine of collateral estoppel, to **GRANT** the Government's motion for summary judgment on all foreign tax credit issues for tax years 1981–1983 and DENY Traveler's cross-motion for summary judgment. The Clerk is directed to enter judgment in case no. 96–543T and the consolidated cases.

It is so **ORDERED.**